**Richard E. MAUL, Plaintiff-Appellee,**

**v.**

**Dr. Evan CONSTAN, Anthony Metzcus, and Richard Gore, Defendants-Appellants.**

**No. 90-1064.**

United States Court of Appeals, Seventh Circuit.

Argued Dec. 4, 1990.

Decided April 1, 1991.

James L. Kingsland, Lasser & Associates, Merrillville, Ind., for plaintiff-appellee.

David A. Nowak, David R. Treeter, Dist. Attys. Gen., Linley E. Pearson, Atty. Gen., Indianapolis, Ind., for defendants-appellants.

Before POSNER and FLAUM, Circuit Judges, and FAIRCHILD, Senior Circuit Judge.

FAIRCHILD, Senior Circuit Judge.

Richard Maul brought this suit pursuant to 42 U.S.C. § 1983 against Dr. Evan Constan, a psychiatrist at Indiana's Westville Correctional Center, Anthony Metzcus, director of administrative services at Westville, and Richard Gore, supervisor of the psychiatric care unit at Westville. Mr. Maul alleged that while he was incarcerated at Westville psychotropic medication was forcibly administered to him in violation of his first, eighth, and fourteenth amendment rights.

On October 30, 1989, following a bench trial, the district court judge held that the defendants had deprived Mr. Maul of liberty without due process. The court awarded Mr. Maul $7500 against each defendant. After the entry of judgment, the defendants filed a post-trial motion and argued that the court erred by failing to apply the doctrine of qualified immunity to them. The court denied the motion because the defendants had waived their qualified immunity argument. The defendants appealed.

## BACKGROUND

Mr. Maul began serving his sentences at Westville in 1983. He was immediately assigned to the psychiatric ward because he was diagnosed as suffering from schizophrenia. Dr. Constan prescribed some psychotropic medication for Mr. Maul at varying times, and when Mr. Maul refused to take the medication it was forcibly administered.

These medications have serious side effects, and Mr. Maul has suffered some of them including memory impairment, depression, akathesia (a very uncomfortable inner feeling of restlessness), and possibly tardive dyskinesia (involuntary movement of body parts such as eyes, tongue and, in extreme cases, diaphragm). Mr. Maul was given medication to combat the side effects of the psychotropic medication. Mr. Maul's expert witness conceded that Mr. Maul had benefitted from the psychotropic medication and that it had been prescribed correctly; he only contended that Mr. Maul was capable of making rational decisions concerning his medical treatment. The defendants concede that Dr. Constan prescribed all of Mr. Maul's medication and that there was never any review of his decisions.

The district court judge decided that due process "requires, at a minimum, internal administrative review of a prison physician's decision to administer antipsychotic drugs over the objection of the inmate, and periodic review of the decision thereafter." Each defendant was responsible for the due process violation because each defendant knew that psychotropic drugs were being forcibly administered to Mr. Maul and could have required that the medication be forcibly administered only pursuant to a hearing. The defendants do not contest the district court's interpretation of due process in light of the Supreme Court's recent decision in *Washington v. Harper*, 494 U.S. 210, 110 S.Ct. 1028, 108 L.Ed.2d 178 (1990), which held that due process requires procedural protection in similar circumstances, and that a system of administrative review of the initial decision fulfills the requirements. The defendants do, however, argue that they did not waive their qualified immunity defense and that the district court erred in its calculation of damages.

## QUALIFIED IMMUNITY

■ The defendants claim that they did not waive their defense of qualified immunity, or, in the alternative, that waiver should not bar their qualified immunity defense.

The defendants clearly did not press a qualified immunity defense in any pretrial motions, at the pretrial conference, or at trial. They argue that they did not waive their qualified immunity defense because they raised this defense in their answer. Their answer, however, refers only to "good faith immunity" which no longer exists.[1] *See Harlow v. Fitzgerald*, 457 U.S.

---

1. The defendants' answer says,

Any action taken by a defendant was taken in the good faith belief that such action did not

800, 815–19, 102 S.Ct. 2727, 2736–38, 73 L.Ed.2d 396 (1982). Furthermore, even if the answer be deemed to have raised the issue of qualified immunity, it is not sufficient to prevent a finding of waiver because the defendants did not preserve the point when they had subsequent opportunity to do so. *Walsh v. Mellas*, 837 F.2d 789, 799–800 (7th Cir.), *cert. denied*, 486 U.S. 1061, 108 S.Ct. 2832, 100 L.Ed.2d 933 (1988). Pretrial orders supersede the pleadings, *Heiar v. Crawford County, Wis.*, 746 F.2d 1190, 1196 (7th Cir.1984) (statute of limitations defense waived because not mentioned at all as case progressed although it was vaguely raised in answer), *cert. denied*, 472 U.S. 1027, 105 S.Ct. 3500, 87 L.Ed.2d 631 (1985), and the pretrial order contained no mention of the qualified immunity issue.

The defendants' second argument is that they raised the qualified immunity defense as soon as the defense was necessary. They explain that under *Harlow v. Fitzgerald* there must be a constitutional violation before qualified immunity is relevant, and they had no indication that their actions violated the constitution until after the trial.

This argument is contrary to well established procedure. The Federal Rules of Civil Procedure require that affirmative defenses be raised in the answer. Fed.R. Civ.P. 8(c). If affirmative defenses need not be raised until after an initial finding of liability, many trials could occur in two stages, causing a waste of time and of resources. The defendants claim that there would be no waste in this case because the trial was necessary to resolve issues unrelated to qualified immunity and because no further hearings are necessary to resolve the qualified immunity issue.

We, however, will not speculate as to how the case would have proceeded had the correct procedure been followed. It is sufficient to note that Mr. Maul might have approached the case differently had the defendants included the defense of qualified immunity in the pretrial order.

The defendants were prejudiced no more than any other defendants who are required to raise defenses before underlying claims are established. The defendants should have contemplated the possibility that Mr. Maul would prevail on his due process claim and that it would be necessary to rely on qualified immunity. The district court's ruling had precedent to support it. Although the Fourth Circuit had decided that due process did not require review of a psychiatrist's decision forcibly to administer psychotropic medication, *United States v. Charters*, 863 F.2d 302 (4th Cir.1988) (*en banc*), *cert. denied*, —— U.S. ——, 110 S.Ct. 1317, 108 L.Ed.2d 493 (1990), the Supreme Court of Washington had held that a judicial hearing was required before psychotropic drugs could be forcibly administered to a prisoner. *Harper v. Washington*, 110 Wash.2d 873, 759 P.2d 358 (1988), *rev'd*, 494 U.S. 210, 110 S.Ct. 1028, 108 L.Ed.2d 178 (1990).

The Indiana Department of Corrections' policy requiring a review of a decision to administer psychotropic medication forcibly [2] should also have alerted the defendants to the possibility that their view of due process would not prevail. The Department of Corrections cannot dictate constitutional due process requirements, but presumably the policy reflects the state's analysis of what due process requires. *See Harper*, 759 P.2d at 366 (involuntary medication policy was formulated in an attempt to adhere to Supreme Court precedent).

---

infringe upon any of plaintiff's constitutionally protected rights, and the defendants are protected by good faith immunity.

2. The policy provides,
   Medication or intrusive procedures will be provided against an offender's wishes only by appropriate health care staff under the direction of a psychiatrist who has caused an examination of the offender to be conducted after an appropriate due process hearing. In an emergency when the offender is dangerous to himself or others, the due process hearing may be delayed until the soonest practical moment, but not later than the next working day. The treatment will be provided by appropriate health care staff under the direction of a psychiatrist who has caused an examination of the offender to be conducted prior to the order for medication or intrusive treatment.

The defendants' third argument seems to be that this case should be distinguished from cases in which qualified immunity was first raised on appeal. The defendants rely on a footnote in *Fiqueroa–Rodriguez v. Aquino*, 863 F.2d 1037, 1041 n. 5 (1st Cir.1988), which says that a defendant "who has appropriately pleaded the affirmative defense of qualified immunity may establish his right to immunity at any point in the proceedings, including at trial." In *Fiqueroa–Rodriguez*, defendants' motion for summary judgment based on qualified immunity had been denied, and the denial appealed. Defendants had again raised the defense in a motion for a directed verdict. The court may have preferred to deal with the facts adduced at trial, for footnote 5 was appended to a statement that "The material evidence on this was fully developed here at trial...." In any event, we do not interpret footnote 5 as supporting the defendants' position here: that having failed to urge the defense in a pretrial motion or at trial they are free to urge it for the first time in a motion after trial and judgment. Such motions may not be used to raise arguments which could have been made at trial or to present a new legal theory. *Federal Deposit Ins. Corp. v. Meyer*, 781 F.2d 1260, 1268 (7th Cir.1986).

The defendants' final two arguments rely on the narrow exceptions to the waiver rule articulated in *Walsh v. Mellas*, 837 F.2d 789 (7th Cir.), *cert. denied*, 486 U.S. 1061, 108 S.Ct. 2832, 100 L.Ed.2d 933 (1988). First, in *Walsh*, the court said waiver should not be a bar when there is plain error. *Id.* at 800. Since *Walsh*, however, this court has decided that the plain error doctrine does not apply to civil cases unless the error concerns subject matter jurisdiction. *Kendra Oil & Gas, Inc. v. Homco, Ltd.*, 879 F.2d 240, 242 (7th Cir. 1989); *Deppe v. Tripp*, 863 F.2d 1356, 1360–61 (7th Cir.1988).

Second, in *Walsh*, the court said waiver would not apply in "exceptional circumstances where justice demands more flexibility." *Walsh*, 837 F.2d at 800. The defendants claim that this is such a situation because the defendants provided proper medical treatment. This claim presumes

that the court erroneously awarded damages in this case. While the damages award is troublesome, we will treat the damages issue separately. Assuming that the damages issue either was or will be correctly resolved, the defendants cannot explain what makes this case exceptional.

There is no reason the defendants could not have raised their qualified immunity defense earlier in the proceedings. We hold that the defendants waived their qualified immunity defense.

## DAMAGES

The district court awarded the plaintiff recovery of $7500 from each defendant. The district court judge's justification of this award is ambiguous. He recognized that damages could be awarded only "for pain and suffering flowing directly from the constitutional deprivation" and that the damage must be proven. Mem. op. at 28. He then stated that he could not find with any degree of certainty that "the internal reviews of Dr. Constan's prescriptions would not have produced the same decisions to medicate Mr. Maul." Mem. op. at 28. In the next paragraph, the judge said, "It seems more likely than not that utilization of an internal review procedure would have reduced Mr. Maul's physical and mental suffering in connection with the unwanted prescription." Mem. op. at 29. This statement has two possible meanings. First, it could mean that Mr. Maul would have been given less medication and consequently would have suffered less if a review procedure had existed. This meaning, however, seems to be inconsistent with the statement that internal review would not have affected Dr. Constan's decisions. Second, it could mean that Mr. Maul would not have resisted as much if the procedure had seemed fairer.

The award of damages is also troubling because it is not clear why plaintiff was awarded $7500 from each defendant individually, for a total of $22,500. There is no suggestion that these awards combine punitive and compensatory damages. Neither is there any suggestion that any de-

fendant was responsible for the lack of due process in less than all the instances of forcible medication. If the court deemed $22,500 required to compensate plaintiff and found all defendants responsible for the harm, each defendant would normally be liable jointly and severally, for $22,500. Restatement 2d of Torts § 433A (1965). The court's opinion explains no theory for recovery of $7500 from each defendant individually.

These ambiguities are most appropriately resolved by the trial judge. We remand the case with instructions that the judge clarify the basis for his award of damages (modifying the award if deemed necessary) and enter a new judgment accordingly.

The portion of the judgment awarding damages is vacated, and the matter remanded for the entry of a new judgment consistent with this opinion. No costs to any party.