Richard E. **MAUL**, Plaintiff–Appellee,

v.

Dr. Evan **CONSTAN**, Anthony A. **Metzcus** and Richard **Gore**, Defendants–Appellants.

No. 93–2266.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 13, 1994.

Decided April 13, 1994.

Rehearing and Suggestion for Rehearing En Banc Denied May 5, 1994.

James L. Kingsland (argued), Lasser & Associates, Merrillville, IN, for plaintiff-appellee.

Wayne E. Uhl, Dist. Atty. Gen., Seth M. Lahn (argued), Federal Litigation, Indianapolis, IN, for defendants-appellants.

Before CUMMINGS, ESCHBACH and FLAUM, Circuit Judges.

CUMMINGS, Circuit Judge.

Defendants are officials of Indiana's Westville Correctional Center. They appeal from the district court's denial of their Rule 60(b)(5) motion for relief from that court's earlier award to plaintiff of $18,542.93 attorney's fees. We reverse.

### Background

Plaintiff Richard E. Maul is an inmate at Westville and filed this civil rights suit in 1985 under 42 U.S.C. § 1983, alleging that the forced administration of psychotropic medication violated his constitutional rights and requesting $100,000 in damages and an injunction. In September 1989 the district court held that defendants denied Maul's right to due process by failing to provide him with a hearing prior to his forced medication. An award of $7,500 damages was entered against each of the three defendants. On appeal, we affirmed the finding of liability but reversed the award of damages for clarification of their basis. *Maul v. Constan*, 928 F.2d 784 (7th Cir.1991).

In June 1991 on remand, the district court concluded that $22,500 damages should be awarded against defendants jointly and severally instead of $7,500 apiece. Prior to this determination, Maul filed a motion for attorney's fees, claiming that he was a "prevailing party" entitled to fees under 42 U.S.C. § 1988. Defendants opposed this request because we had denied costs for the appeal. In August 1991 the district court rejected defendants' objections and granted plaintiff $18,542.93 in attorney's fees, which were paid to Maul's attorney.

In December 1992 this Court reversed the district court's award of $22,500 in compensatory damages in favor of Maul because he failed to demonstrate that he was actually injured by the denial of his right to procedural due process, and the case was remanded to the district court to assess $1 in nominal damages against the defendants. *Maul v. Constan*, 983 F.2d 1072 (unpublished), 1992 WL 382375 (7th Cir. Dec. 16, 1992). The award of attorney's fees was not part of that appeal and thus was not addressed by this Court.

In February 1993 after the $1 judgment was entered on remand, defendants moved pursuant to Fed.R.Civ.P. 60(b)(5) for a refund of the $18,542.93 attorney's fees paid to Maul's attorney before the merits judgment was reversed. Rule 60(b)(5) provides that the district court may relieve a party from a legal judgment if, among other things, the "prior judgment upon which [the judgment in question] is based has been reversed or otherwise vacated * * *."[1] The district court

---

1. Although plaintiff argued before the district court, and does so again here, that the award of

denied defendants' motion, resulting in this appeal.

This Court reviews a trial court's Rule 60(b)(5) determination under an abuse of discretion standard. *McKnight v. United States Steel Corp.*, 726 F.2d 333, 335 (7th Cir.1984).

### Analysis

■ The assessment—or as here, the re-assessment—of attorney's fees in Section 1983 actions in which the prevailing party has received only nominal damages is controlled by *Farrar v. Hobby*, — U.S. —, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992). There Farrar had sued certain officials for $17 million under 42 U.S.C. §§ 1983 and 1985, alleging deprivation of liberty and property without due process. Although the jury found that Farrar was entitled to a nominal award of $1, the district court awarded plaintiffs $280,000 in legal fees. The Fifth Circuit held that plaintiffs were not prevailing parties and were therefore not entitled to fees under Section 1988. *Estate of Farrar v. Cain*, 941 F.2d 1311 (5th Cir.1991).

The Supreme Court held that while petitioners were prevailing parties because they had obtained a nominal damages award, they were not entitled to attorney's fees since they had only received $1 in damages. The *Farrar* Court stated: "In a civil rights suit for damages * * * the award[ ] of nominal damages * * * highlights the plaintiffs' failure to prove actual, compensable injury." The Court added that where plaintiff recovers only nominal damages, "the only reasonable fee is usually no fee at all." — U.S. at —, 113 S.Ct. at 575. Consequently the Fifth Circuit's reversal of the fee award was upheld.

Subsequently we applied *Farrar v. Hobby* in *Cartwright v. Stamper*, 7 F.3d 106 (7th Cir.1993). There we pointed out that the award of nominal damages of $1 on each successful claim was *de minimis*, so that no attorney's fees should have been awarded

instead of the $52,875 allowed by the district court. 7 F.3d at 109. In *Cartwright* the district court did not have the benefit of *Farrar*, which was decided before the *Cartwright* case reached us.

In *Cartwright* we observed that in *Farrar* the Supreme Court had set forth the following three factors to determine whether a plaintiff who has obtained only nominal damages is nonetheless entitled to receive attorney's fees: "[1] the difference between the judgment recovered and the recovery sought, [2] the significance of the legal issue on which the plaintiff prevailed and finally, [3] the public purpose served by the litigation." 7 F.3d at 109.

■ In the case now before this Court, Maul sought substantial compensatory damages, but recovered only $1 in nominal damages, one one-hundred-thousandth of the amount he sought. This factor is the most important of the three, 7 F.3d at 110, and here clearly militates against an award of attorney's fees.

■ The second factor considers the significance of the legal issue on which the plaintiff prevailed. According to *Cartwright*, this factor looks to the extent to which plaintiff succeeded on his theory of liability. 7 F.3d at 110. However, the degree of plaintiff's success—whether plaintiff's victory is significant or merely *de minimis*—is the ultimate question on which the reasonableness of an award of attorney's fees turns. Thus we understand the second *Farrar* factor to address the legal import of the constitutional claim on which plaintiff prevailed. Here the plaintiff established that he was entitled " 'at a minimum, [to an] internal administrative review of [the] prison physician's decision to administer antipsychotic drugs over [his] objection * * *.' " 928 F.2d at 785 (quoting district court order). The question of whether plaintiff is entitled to a hearing before antipsychotic drugs are administered against his wishes is clearly a significant constitu-

---

attorney's fees is reasonable despite our reversal of the $22,500 damages award, plaintiff does not dispute that it was necessary to reassess the award of attorney's fees under Rule 60(b)(5) after this Court reversed the underlying damage

award. See *Mother Goose Nursery Schools v. Sendak*, 770 F.2d 668, 676 (7th Cir.1985), certiorari denied, 474 U.S. 1102, 106 S.Ct. 884, 88 L.Ed.2d 919 (1986).

tional question, one in fact addressed recently by the Supreme Court in *Washington v. Harper*, 494 U.S. 210, 110 S.Ct. 1028, 108 L.Ed.2d 178 (1990). This factor, however, is the least important of the three factors, 7 F.3d at 110, and therefore only minimally advances plaintiff's claim that he is entitled to attorney's fees.

■ The third factor considers the public purpose served by plaintiff's suit, assessing principally whether plaintiff's "victory vindicat[ed] important rights and deterr[ed] future violations." 7 F.3d at 110. However, since all Section 1983 claims seek to redress "the deprivation of * * * rights, privileges, or immunities secured by the Constitution and laws * * *," 42 U.S.C. § 1983, this factor is not satisfied merely because the plaintiff establishes, as he did here, that his constitutional rights have been infringed. Instead, this Court must scrutinize plaintiff's complaint to determine whether the allegations made and the relief sought evince a public purpose rather than merely attempt to redress a private injury.

An examination of the specific allegations made and the actual relief sought by Maul makes clear that this suit's primary purpose was to remedy plaintiff's own injuries and not to establish the rights of inmates generally. Plaintiff brought suit only on his own behalf, alleging *only violations of his own rights.* He made no claim that he represented a class of inmates similarly victimized or that the defendants had engaged in a pattern or practice of violating fellow inmates' right to a hearing prior to being involuntarily medicated. In fact plaintiff acknowledges that the "Indiana Department of Corrections had regulations in place at the time of [his] com-

plaints which provided for due process hearings prior to involuntary medication" (Br. 9). Moreover, the relief requested by the plaintiff sought only to redress plaintiff's own injuries: he requested only compensatory damages for his own injuries and an injunction "ordering defendants, or their agents, to refrain from involuntary administration of antipsychotic drugs *to plaintiff* which have deleterious effect on *his* health." (Amended complaint at 4) (emphasis added). And since plaintiff later withdrew his request for an injunction,[2] his claim here that his victory deterred future violations by the defendants or others is conjectural. Thus despite plaintiff's contention that his suit served to protect the constitutional rights of inmates generally, his complaint indicates a more limited objective, redressing his private injury.[3]

This is not to say that plaintiff's vindication of his own constitutional rights served no public purpose. However, since Section 1983 claims necessarily involve the violation of a right, privilege or immunity, attorney's fees are appropriate after *Farrar* only when the plaintiff's victory entails something more than merely a determination that a constitutional guarantee was infringed. The public purpose prong of *Farrar* is, in other words, not satisfied simply because plaintiff successfully establishes that his constitutional rights have been violated. Something more is needed. Thus, for example, in *Cartwright* we indicated that an award of punitive damages in addition to compensatory damages was "strong evidence of public purpose"—the public being served by punishing those who willfully or with reckless abandon trample on the guarantees afforded by the United States Constitution. 7 F.3d at 110. Here, however, the plaintiff failed to establish anything more

2. Plaintiff later "waived his original request for injunctive relief in light of the Agreed Entry filed in [the United States District Court for the Northern District of Indiana] in *Anderson v. Orr*, civil action [No.] S83–0481 on January 13, 1983" (Trial Br. at 1).

3. The dissent claims that "plaintiff's suit accomplished the public goal of forcing defendants to abide by their own regulations regarding involuntary medication" because it "is more than mere conjecture" that Maul's suit deterred future violations. *Dissent* at 149. But even Farrar's victory secured that much deterrence: surely his

$1 victory to some extent discouraged future misconduct by the defendant in that case. However, by rejecting Farrar's request for attorney's fees, the Supreme Court made clear that more than this level of deterrence—whether it is "merely conjectural" or slightly more than that— is required before attorney's fees are appropriate. And since we are not persuaded that the district court or the dissent has established that the deterrent effect of Maul's victory is any greater than the nominal deterrence caused by Farrar's victory, we find it impossible to conclude that Maul's attorney is entitled to an award of fees.

than that he had been denied a protected right: he did not establish that he had suffered actual injury (hence the award of only nominal damages); he did not obtain an injunction prohibiting future violations; and he did not establish that the defendants' conduct was sufficiently reprehensible to warrant punitive damages.

Having weighed the *Farrar* factors, we hold that the district court abused its discretion by awarding attorney's fees to Maul: the difference between the judgment sought and obtained was great and the public purpose of the litigation was minimal. Since plaintiff's victory was *de minimis,* an award of attorney's fees was inappropriate. The district court's denial of the defendants' Rule 60(b)(5) motion for relief from that court's earlier award of attorney's fees is therefore reversed and the case is remanded to the district court to order plaintiff's attorney to refund the $18,542.93 attorney's fees he was paid by the defendants.[4]

FLAUM, Circuit Judge, dissenting.

The sole issue presented in this case is whether the plaintiff's victory is *de minimis* so that the only reasonable attorney's fee is either no fee or a substantially reduced fee. *Farrar v. Hobby,* —— U.S. ——, ——, 113 S.Ct. 566, 575, 121 L.Ed.2d 494 (1992); *Cartwright v. Stamper,* 7 F.3d 106, 109 (7th Cir. 1993). As we recognized in *Cartwright,* whether a victory is *de minimis* for purposes of awarding reasonable attorney's fees "is generally left for the district court to decide in the first instance." *Id.* Here the district court, after weighing the appropriate factors, *see Farrar,* —— U.S. at —— - ——, 113 S.Ct. at 578–579 (O'Connor, J., concurring), concluded that Maul "received more than a 'technical' victory or 'moral' satisfaction." Accordingly, the court denied defendants' Rule 60(b)(5) motion for relief from the previous award of attorney's fees.

I.

A district court's denial of a Rule 60(b) motion will not be overturned on appeal in the absence of an abuse of discretion.

*McKnight v. United States Steel Corp.,* 726 F.2d 333, 335 (7th Cir.1984). When applying the abuse of discretion standard, this court will reverse "only when no reasonable person could agree with the district court; there is no abuse of discretion if a reasonable person could disagree as to the propriety of the court's actions." *Id.* (citing *Simons v. Gorsuch,* 715 F.2d 1248, 1253 (7th Cir.1983)). Similarly, this court has held on several occasions that appellate review of attorney's fees awards is limited to a "highly deferential abuse of discretion standard." *Estate of Borst v. O'Brien,* 979 F.2d 511, 514 (7th Cir.1992); *see also Cartwright,* 7 F.3d at 109 ("[D]istrict courts are granted great discretion in awarding attorneys' fees ..."); *Libby by Libby v. Illinois High School Ass'n,* 921 F.2d 96, 98 (7th Cir.1990) ("This court has a limited focus when reviewing a district court's ruling on a fee petition."). As the *Libby* panel explained, the fee determination "rests within the sound discretion of the district court because that court is particularly well-qualified to make the partially subjective findings necessary for an award of fees and to perform the balancing of equities that is an integral part of the proceeding for an award of fees." 921 F.2d at 98. Consequently, as with a Rule 60(b) motion, a decision on attorney's fees will be set aside only where no reasonable person could take the view adopted by the trial court. *Id.* (citing *Munson v. Friske,* 754 F.2d 683, 696 (7th Cir.1985)).

II.

*Farrar* is the obvious starting point for an assessment of whether any reasonable person could have concluded that Maul was entitled to attorney's fees. Under *Farrar,* there is no question that a civil rights plaintiff recovering only nominal damages qualifies for prevailing party status under 42 U.S.C. § 1988. —— U.S. ——, ——, 113 S.Ct. 566, 573, 121 L.Ed.2d 494 (1992). However, "[i]n some circumstances, even a plaintiff who formally 'prevails' under § 1988 should receive no attorney's fees at all." *Id.* at ——, 113

---

4. Defendants argue that this refund should include interest from the date the attorney's fees

were paid to plaintiff, but they have not persuaded us that such interest would be appropriate.

S.Ct. at 575. "A plaintiff who seeks compensatory damages but receives no more than nominal damages is *often* such a prevailing party," and in such circumstances "the only reasonable fee is *usually* no fee at all." *Id.* (emphasis supplied). In determining whether a particular case is a "usual" one, district courts must consider the three factors explicated in Justice O'Connor's *Farrar* concurrence: (1) the difference between the judgment recovered and the recovery sought; (2) the significance of the legal issue on which the plaintiff prevailed; and (3) the public purpose served by the litigation. At ——— ———, 113 S.Ct. at 578–579; *see also Cartwright,* 7 F.3d at 109 (applying these factors).

In my view, neither Justice Thomas' opinion for the Court nor Justice O'Connor's concurring opinion in *Farrar* evince a talismanic approach, either in tone or substance, to the question presented here. Rather, as the district judge recognized, *Farrar* raises a rebuttable presumption that attorney's fees are inappropriate when a plaintiff recovers only nominal damages. In some cases, however, attorney's fees are appropriate because "[n]ominal relief does not necessarily a nominal victory make." *Farrar,* —— U.S. at ——, 113 S.Ct. at 578 (O'Connor, J., concurring). Moreover, despite this presumption, "reasonableness" remains the touchstone of the attorney's fees inquiry. *See Farrar,* —— U.S. at ——, 113 S.Ct. at 575 (noting the court's "central" responsibility to make the assessment of what is a reasonable fee under the circumstances); *Blanchard v. Bergeron,* 489 U.S. 87, 96, 109 S.Ct. 939, 945–46, 103 L.Ed.2d 67 (1989) (same). Indeed, in view of the text of § 1988 and the policies behind it, it is not surprising that "reasonableness" and "discretion" are the hallmarks of the fee determination. The final sentence of § 1988 provides as follows:

> In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 of this title, ... the court, *in its discretion,* may allow the prevailing party, other than the United States, a *reasonable* attorney's fee as part of the costs.

42 U.S.C. § 1988 (emphasis supplied). In construing this statute, the Court has noted the countervailing policy considerations implicated by the availability of attorney's fees in some cases. Section 1988 "is a tool that ensures the vindication of important rights, even when large sums of money are not at stake, by making attorney's fees available under a private attorney general theory," but it is not "a relief Act for lawyers" who accomplish no public goal "other than occupying the time and energy of counsel, court, and client." *See Farrar,* —— U.S. at ——, 113 S.Ct. at 578 (O'Connor, J., concurring). The task of weighing the *Farrar* factors in the context of these policies results in an inherently subjective determination of the propriety of attorney's fees and is best performed by the district court "in light of its 'superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters.'" *Estate of Borst,* 979 F.2d at 514 (citing *Hensley v. Eckerhart,* 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983)).

Unlike the court below in *Farrar,* the district court here did not simply calculate Maul's fee award "without engaging in any measured exercise of discretion." —— U.S. at ——, 113 S.Ct. at 575. On the contrary, the district court opinion explicitly recognized that *Farrar* "limited the circumstances in which attorney fees may be awarded under § 1988 to a plaintiff who recovers only nominal damages." Mem.Op. at 7. The district court properly applied the *Farrar* factors and determined that this case was sufficiently unlike *Farrar* to warrant a fee award. First, the court recognized that although Maul and Farrar recovered an identical amount in real terms—one dollar—the difference between the recovery sought and the judgment recovered here was "not as glaring as the difference in *Farrar v. Hobby.*" Mem. Op. at 6. Second, the court determined that the legal issue on which Maul prevailed—whether the Constitution requires a hearing before the State may forcibly administer psychotropic medication to a prisoner against his will—was significant, especially in light of a subsequent Supreme Court decision, *Washington v. Harper,* 494 U.S. 210, 110 S.Ct. 1028, 108 L.Ed.2d 178 (1990), that reached the same conclusion. Finally, the court found that Maul's suit achieved an important public goal because it reinforced the rights of

other inmates by helping to deter defendants from future instances of noncompliance with their own regulations. Mem.Op. at 7.

In reviewing the fee award, the majority correctly identifies the first and second factors as the most and least important respectively. Accordingly, I have no quarrel with the conclusion that Maul's recovery of a small fraction of what he sought militates more strongly against the fee award than the significance of the right vindicated persuades in favor of such an award.[1] With respect to the third factor, however, I must depart from the majority's approach. After reviewing what Maul asked for and what he received, the majority concludes that the fee award was an abuse of discretion because Maul failed to either prove actual injury (entitling him to compensatory damages), obtain an injunction, or receive an award of punitive damages. Opinion *ante* at 147. While any of these forms of redress would strongly support a fee award, I do not believe an award necessarily is unreasonable in their absence. The district court concluded that Maul's suit had served an important public purpose by potentially deterring future violations. The majority deems this argument "conjectural", opinion *ante* at 146, because Maul waived his original request for an injunction following the filing of an Agreed Entry with respect to conditions and practices at the Westville Correctional Center. *See Anderson v. Orr*, No. S83–0481 (N.D.Ind.) (filed January 13, 1989). I do not believe that this Agreed Entry and Maul's resulting failure to seek or obtain an injunction let defendants off the hook so easily. Maul's suit alleged that defendants failed to follow their own regulations. Defendants claim that "if anything, it was the results achieved in a *different* lawsuit [*Anderson v. Orr* ], not the case at bar, that made any kind of lasting impact on overall conditions or practices of Defendants." Br. at 15. Yet the Agreed Entry in *Anderson* denies that any

constitutional violations had occurred at Westville and reflects the view that the Due Process Clause is satisfied by a physician's individual determination that forced medication is appropriate. Both of these positions were rejected by the district court as a result of Maul's suit.[2] Thus, while it is true that injunctive relief would have given Maul a legally enforceable right beyond his right to the one dollar in damages, I believe that the district court's conclusion that Maul's suit likely deterred future violations is more than mere conjecture. *Cf. Hewitt v. Helms*, 482 U.S. 755, 760, 107 S.Ct. 2672, 2676, 96 L.Ed.2d 654 (1987) ("[R]elief need not be judicially decreed in order to justify a fee award under § 1988.").

The majority further concludes that attorney's fees are inappropriate here because the deterrent effect of Maul's suit—"whether it is 'merely conjectural' or slightly more than that"—was no greater than the nominal deterrence caused by the petitioner's victory in *Farrar*. Opinion *ante* at 146 n. 3. Respectfully, I cannot agree that the holding of *Farrar* cabins our discretion to chart a different course in this case. In rejecting the possibility that the deterrent effect of Farrar's suit served an important public purpose, Justice O'Connor wrote,

[O]ne searches in vain for the public purpose this litigation might have served. The District Court speculated that the judgment, if accompanied by a large fee award, might deter future lawless conduct, see App. to Pet. for Cert. A23–A24, but did not identify the kind of lawless conduct that might be prevented. Nor is the conduct to be deterred apparent from the verdict, which even petitioners acknowledge is "regrettably obtuse." Tr. of Oral Arg. 16. Such a judgment cannot deter misconduct any more than a bolt of lightning can; its results might be devastating,

1. I do think, however, that the majority understates the importance of the second factor by concluding that it only "minimally" advances Maul's case. Opinion *ante* at 146.

2. This case therefore is distinguishable from *Willis v. Chicago*, 999 F.2d 284 (7th Cir.1993), *cert. denied*, — U.S. —, 114 S.Ct. 879, 127 L.Ed.2d

74 (1994), in which the change in policy sought to be affected by the lawsuit—recision of the city's extended detention policy—took place approximately six months *before* plaintiff filed suit. Here, by contrast, plaintiff's complaint predates the Agreed Entry by fourteen months and the court's finding of a constitutional violation by nearly two years.

but it teaches no valuable lesson because it carries no discernable meaning. *Farrar,* — U.S. at —–—, 113 S.Ct. at 578–579 (O'Connor, J., concurring) (citations omitted). Here, by contrast, the district court expressly found that Maul, by vindicating his own constitutional rights, advanced the important public purpose of forcing defendants to provide due process hearings prior to forced medication (as provided for in the Indiana Department of Corrections regulations) rather than merely relying on a physician's individual determination that such medication was appropriate (as permitted under the Agreed Entry). Moreover, the district court specifically noted that "[a]n award of attorney fees may help to deter the defendants from similar noncompliance with their regulations in the future." Mem.Op. at 7. In their reply brief, defendants characterize the possible deterrent effect of Maul's suit as "pure speculation." Rep.Br. at 5. Yet, in the very next paragraph, defendants admit that they "may well chose [*sic*] to adhere to the boundaries suggested by the district court's analysis out of a desire to avoid future lawsuits or simply out of recognition that the district court was correct." *Id.* While defendants are correct in asserting that their conformity to the district court's standards may not have been judicially compelled, their concession lends support to the view that Maul's victory, unlike Farrar's, had a significant deterrent effect.

### III.

The district court, weighing the appropriate factors, determined that a fee award was reasonable in this case because (1) the difference between the recovery sought and the judgment recovered was not as glaring as that in *Farrar;* (2) plaintiff prevailed on a significant legal issue—"the right to resist the administration of mind altering drugs," *Harper,* 494 U.S. at 238, 110 S.Ct. at 1045 (Stevens, J., concurring in part and dissenting in part); and (3) plaintiff's suit accomplished the public goal of forcing defendants to abide by their own regulations regarding involuntary medication. The majority rejects the district court's conclusion with respect to (3), and, as a result, reverses the fee award as an abuse of discretion. In my view,

the majority has adequately explained why it would not have awarded attorney's fees to Maul, but it has not demonstrated that the district judge's contrary decision was an abuse of discretion. *Cf. Monsanto Company v. E.P.A.,* 19 F.3d 1201, 1210 (7th Cir.1994) (Easterbrook, J., dissenting). Because I cannot conclude that "no reasonable person could agree with the district court," *Libby by Libby,* 921 F.2d at 98; *McKnight,* 726 F.2d at 335, I respectfully dissent. I would affirm the denial of defendant's motion for relief from the previous judgment of attorney's fees.