# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

January 2, 2026

Lyle W. Cayce
Clerk

No. 24-20138

---

Joe Richard Pool, III; Trenton Donn Pool; Accelevate2020, L.L.C.; Liberty Initiative Fund; Paul Jacob,

*Plaintiffs—Appellants*,

*versus*

City of Houston; Anna Russell, *in her official capacity as the City Secretary of the City of Houston*; Pat J. Daniel, *In her official capacity as the Secretary of the City of Houston*,

*Defendants—Appellees*.

---

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:19-CV-2236

---

Before Smith, Higginson, and Douglas, *Circuit Judges*.

Dana M. Douglas, *Circuit Judge*:

This case has now been appealed to our court on three occasions, two of which are relevant for our discussion. These appeals stem from Appellants' constitutional challenge to provisions of the City of Houston's ("City") home-rule charter ("Charter") that required petition circulators to be residents and registered voters of Houston. In the first appeal, the panel held that Appellants had standing to seek a permanent injunction against

enforcement of the provisions, even though the City claimed it had conceded that the provisions were unconstitutional and so-called "zombie" laws: laws that have been held unenforceable by courts but remain in the statutory books. *Pool v. City of Houston* (*Pool I*), 978 F.3d 307, 309–311, 314 (5th Cir. 2020).[1] Subsequently, a different panel held that the case presented no Article III controversy—finding that all parties had agreed "from the beginning" that the provisions are unconstitutional—and remanded for dismissal without prejudice. *Pool v. City of Houston* (*Pool II*), 87 F.4th 733, 733–34 (5th Cir. 2023). Appellants now appeal the district court's order on remand vacating an award of attorney's fees and expenses they had received, where the court reasoned that the fee award no longer had a legal basis in light of *Pool II*. We AFFIRM.

I

A review of the factual background that led us here is pertinent. The Charter authorizes the circulation of initiatives and referenda. When this suit was brought, certain Charter provisions required a circulator of initiative and referendum petitions to be a "qualified voter," meaning the circulator must be a resident and registered voter of Houston. Specifically, the Charter required circulators to use a petition form in which they had to attest, by notarized signature, that they met the residency and voter registration requirement. In 2019, Appellants sought to circulate a petition for an ordinance to be put on the Houston ballot that would limit campaign contributions from City contractors to candidates for municipal office. But, as Appellants did not reside in Houston and were not registered to vote in

---

[1] Appellants contest the City's claim that it agreed "from the outset" that the Charter provision was unconstitutional. In fact, the record reflects that Appellants reached out to the City prior to the filing of their initial complaint and, in response, the City made no indication as to its position on the constitutionality of the provision.

Houston, they were ineligible circulators, per the Charter. Before filing the underlying suit, Appellants emailed the City to convey their desire to promptly circulate petitions and sue for emergency relief given the Charter's qualified-voter requirement. *Pool I* at 310. The City responded that it was unsure of its position on the Charter's qualified-voter requirement. *Id.* Roughly one week later, the City changed course and informed Appellants that it would not enforce the requirement. *Id.* at 310 n.5. Nevertheless, Appellants filed suit against the City in federal court, bringing facial and as-applied challenges to the Charter's qualified-voter requirement. *Id.* They sought injunctive relief against the City's enforcement of the requirement and a declaratory judgment that the relevant Charter provisions were unconstitutional. *Id.*

Appellants grounded their argument in *Buckley v. American Constitutional Law Foundation, Inc.*, 525 U.S. 182, 193–92 (1999), where the Supreme Court held unconstitutional a Colorado law providing that only registered voters could circulate petitions for ballot initiatives. Given the holding in *Buckley*, the City has maintained throughout this suit that the Charter provisions governing petition circulators are unconstitutional, and thus unenforceable. *Pool I* at 309.

In July 2019, the district court granted Appellants' motion for a temporary restraining order ("TRO"), enjoining the City from enforcing the Charter's residency and voter registration requirements against petition circulators. Once the circulation period ended, the district court dismissed Appellants' claims as moot, per an agreement reached by the parties at the TRO hearing. Appellants then moved to alter or amend that judgment, which the district court denied, concluding there was no longer a live controversy. Appellants appealed, arguing the case was not moot because they had standing with respect to future petitions. Before this court ruled on that appeal in *Pool I*, the City inserted an editor's note below the relevant

No. 24-20138

Charter provisions indicating that it would accept petitions circulated by non-residents who were not registered to vote, adding a hyperlink to a non-resident petition form to that effect. *See Pool I* at 312.

Then arrives *Pool I.* The panel noted that, although the City had now conceded that the Charter's qualified-voter rule was unconstitutional, the question on appeal was whether Appellants could obtain a permanent injunction preventing enforcement of those Charter provisions, which "turn[ed] on two related but distinct justiciability doctrines: standing and mootness." *Pool I* at 311. Ultimately, the panel reversed and remanded, holding that (1) Appellants had standing to seek declaratory and injunctive relief for future petitions, and (2) the City's post-suit disavowal of the qualified-voter requirement did not moot the case. *Id.* at 313–14.

Regarding standing, the panel found that there were indicators that the City might decide to enforce the qualified-voter requirement despite the holding in *Buckley* that a similar law was unconstitutional. *Pool I* at 312. The panel concluded that Appellants "had reason to believe the City would be 'seriously intent' on continuing to enforce the qualified-voter requirement," and thus they had standing to seek a permanent injunction. *Id.* (quotation omitted). As to mootness, the panel determined that the City's inclusion of the editor's note and non-resident petition form in the Charter did not moot the case because it was not clear whether the City had made any formal policy change. *Id.* at 313–14. But the panel stated that, in ruling on Appellants' permanent injunction request on remand, "the district court may consider whether to allow additional evidence concerning the legal authority behind the new [petition] form and the extent to which it is binding." *Id.* at 314.

In February 2022, on remand, the district court granted the City's motion to dismiss Appellants' claims for permanent injunctive relief. In the same order, the court also granted Appellants' claim, on a summary

4

judgment motion, for a declaratory judgment that the challenged Charter provisions were unconstitutional. The court directed the City to advise whether it planned to enact an ordinance given the February 2022 order. It was only thereafter that the City notified the court that it had passed and adopted Ordinance No. 2022-455, which eliminated the Charter's qualified-voter requirement and allowed non-residents and non-registered voters to circulate petitions in Houston.

The district court then entered a final judgment in July 2022, which referenced the prior declaratory judgment and dismissed Appellants' claims with prejudice. Appellants moved to alter the final judgment to "include, and set out the precise terms of, the declaratory judgment that [they] were granted." The district court denied the motion, stating that the language in its February 2022 order referencing the declaratory judgment was final. Appellants appealed from the final judgment, which led to *Pool II*.

But first, while that appeal was ongoing, Appellants filed an amended request for attorney's fees, arguing that they were "prevailing parties" under 42 U.S.C. § 1988(b), per the factors set forth in *Buckhannon Board & Care Home, Inc. v. West Virginia Department of Health & Human Resources*, 532 U.S. 598, 604 (2001).[2] The district court granted the motion. It reasoned

---

[2] In *Buckhannon*, the Supreme Court explained the considerations pertinent to establishing prevailing party status for purposes of § 1988(b). 532 U.S. at 604. "Building on *Buckhannon*," our circuit has fashioned three requirements for a movant to demonstrate prevailing party status: "(1) the plaintiff must achieve judicially-sanctioned relief, (2) the relief must materially alter the legal relationship between the parties, and (3) the relief must modify the defendant's behavior in a way that directly benefits the plaintiff at the time the relief is entered." *Petteway v. Henry*, 738 F.3d 132, 137 (5th Cir. 2013). Here, Appellants' initial request for attorney's fees under § 1988(b) predated the City's adoption of Ordinance No. 2022-455. The district court denied this initial fee request, finding that Appellants failed to establish prevailing party status because their success in obtaining a TRO, without more, did not satisfy the second and third factors. On appeal from that denial, this court granted the City's motion to dismiss, finding there to be no jurisdictional

that Appellants satisfied the first factor of having achieved judicially sanctioned relief because they had obtained "both a TRO *and* a declaratory judgment" that the Charter provisions were unconstitutional. Further, the court found that Appellants met the second and third factors because the City had adopted Ordinance No. 2022-455 "[i]n direct response to" the court's declaratory judgment order. Thus, the court concluded that Appellants were prevailing parties under § 1988(b) and entitled to attorney's fees and expenses calculated at $116,359.69. The City paid the fee award accordingly.

Stage set for *Pool II*. There, in a four-paragraph opinion that makes no reference to the previously published decision in *Pool I*, the panel concluded that the case presented a "faux dispute[]" because, "where the parties agree on a constitutional question, there is no adversity and hence no Article III case or controversy." *Pool II* at 733–34. Citing only the City's brief, the panel reasoned that "all parties have agreed from the beginning of this case" that the Charter "provisions governing circulators are unconstitutional." *Id.* (quotation omitted). The panel further opined that the case was not justiciable because the City "agreed that it would and could not enforce the provisions." *Id.* (quotation omitted). The panel vacated the final judgment and remanded with instructions to dismiss Appellants' claims without prejudice. *Id.* at 734.

On remand, given the holding of *Pool II*, the district court granted the City's motion—under Federal Rule of Civil Procedure 60(b)(5)—for an order dismissing Appellants' claims without prejudice, vacating the award of attorney's fees, and requiring Appellants to refund the $116,359.69 paid to them by the City per the fee award. The court explained that it could

---

basis for the appeal on ripeness grounds because Appellants' merits challenge to the Charter was on remand in the district court. *Pool v. City of Houston*, 858 F. App'x 732, 734 (5th Cir. 2021).

appropriately relieve the City from the fee award because the order upon which the award stood was "based on an earlier judgment that ha[d] been reversed" in the wake of *Pool II*'s holding that no case or controversy existed. Appellants now appeal from the district court's order on remand vacating the fee award and requiring that the City be reimbursed.

Following the submission of the parties' briefs for the instant case, the Supreme Court decided *Lackey v. Stinnie*, wherein the Court ruled that Virginia drivers who challenged the constitutionality of a Virginia law were not prevailing parties under 42 U.S.C. § 1988(b). 604 U.S. 192 (2025). In *Lackey*, after the Virginia drivers obtained a preliminary injunction enjoining the state from enforcing a law suspending their licenses for unpaid traffic fines, the state of Virginia repealed the challenged law, notably absent a directive from the district court. *Id.* at 195. Appellees filed a Rule 28(j) letter arguing that *Lackey* forecloses Appellant's arguments. Appellants responded that *Lackey* is inapposite. We agree.

## II

The primary issue is whether the district court properly granted the City's Rule 60(b)(5) motion to vacate the award of attorney's fees after the determination in *Pool II* that the case lacked adversariness. "We review Rule 60(b) decisions for abuse of discretion." *Roberts v. Wal-Mart La., L.L.C.*, 54 F.4th 852, 854 (5th Cir. 2022) (citing *Flowers v. S. Reg'l Physician Servs., Inc.*, 286 F.3d 798, 800 (5th Cir. 2002)).

## III

The district court's reversal of the fee award was grounded in its conclusion that, flowing from *Pool II*'s "no case or controversy" holding, no prior relief or award granted to Appellants had legal effect because the court "was without jurisdiction" to grant such relief. Appellants contend that the alleged mootness-based dismissal in *Pool II*—after Appellants had already

received a TRO and declaratory relief in the district court—did not deprive them of their prevailing party status, and thus the district court erred by reversing the fee award. Notably, despite Appellants' claim that certain readings of *Pool II* may necessarily overrule *Pool I*, in violation of our court's well-established rule of orderliness, and the law of the case doctrine, Appellants made no attempt to reconcile these rulings with our circuit after *Pool II* was issued.

A

The City, through its 28(j) letter, argues that the Supreme Court decision in *Lackey v. Stinnie* is dispositive of the entire issue of the Appellant's fee award and precludes any recovery on their behalf. Appellants respond that *Lackey* is distinguishable for several reasons. We agree.

In *Lackey*, the Supreme Court decided that Virginia drivers who successfully obtained preliminary injunction were not prevailing parties and therefore unable to collect a fee award. *See Lackey* at 207–08. The Court reasoned that a "prevailing party . . . is '[t]he party ultimately prevailing when the matter is finally set at rest.'" *Id*. at 200 (quoting BLACK'S LAW DICTIONARY, 1352). The Court explained that preliminary injunctions "do not conclusively resolve legal disputes. In awarding preliminary injunctions, courts determine if a plaintiff is *likely* to succeed on the merits." *Id*. Because of this holding of the Supreme Court, *Lackey* is distinguishable from the case at bar.

In *Lackey*, the plaintiffs received only a preliminary injunction, and following their receiving it, the state of Virginia repealed its unconstitutional law, absent express judicial intervention. *Id*. Here, however, Appellants received a declaratory judgment along with their award of preliminary relief. Additionally, unlike the state of Virginia, the City repealed its law in direct response to the district court's order: "the City of Houston notifies the Court

and Plaintiffs' counsel that the City intends to amend or enact a new ordinance *in light of the Court's opinion*." *Lackey* focuses on the necessity of a "judicially sanctioned" change in the relationship between the parties, and in this case, it is axiomatic that the City repealed the Charter provision due to the mandate set out by the district court in its declaratory judgment. Therefore, *Lackey* does not deprive Appellants of their prevailing party status.

B

"The law of the case doctrine, as formulated in this circuit, generally precludes reexamination of issues of law or fact decided on appeal, either by the district court on remand or by the appellate court itself on a subsequent appeal." *USPPS, Ltd. v. Avery Dennison Corp.*, 647 F.3d 274, 282 (5th Cir. 2011) (quoting *Todd Shipyards Corp. v. Auto Transp., S.A.*, 763 F.2d 745, 750 (5th Cir. 1987)). In scope, the doctrine applies "to issues that were decided in the former proceeding but not to questions which might have been decided but were not." *Id.* at 282–83 (quoting *Morrow v. Dillard,* 580 F.2d 1284, 1290 (5th Cir. 1978)). And "the doctrine does encompass 'things decided by necessary implication as well as those decided explicitly.'" *Id.* at 283. (quoting *Free v. Abbott Labs., Inc.*, 164 F.3d 270, 272–73 (5th Cir. 1999)).

Here, Appellants posit that the question of justiciability was answered definitively in *Pool I*, and thus it would contravene the law-of-the-case doctrine to read *Pool II* "as a repudiation of *Pool I*'s holding that [Appellants] established standing and that the case was not moot at the time of *Pool I*." To be sure, though this argument has some merit, such an argument does not save Appellants here. That is because what Appellants fail to address is that following the *Pool II* decision, they made no attempt to rectify it. After *Pool II* was issued, Appellants had two options before them: "A party may seek rehearing of a decision through a petition for panel rehearing, a petition for

No. 24-20138

rehearing en banc, or both." FEDERAL RULE OF APPELLATE PROCEDURE 40. Instead, Appellants elected to do nothing and wait for the mandate to be issued. Appellants chose to appeal the effect of the decision rather than the decision itself—they allowed the *Pool II* mandate to undo their prevailing party status without so much as filing a motion before our court.

Appellants now come back to our circuit, for a third time, asking this panel to clear up an inconsistency that they had the opportunity to resolve, had they not sat on their own hands. We decline to do so. Appellants had ample opportunity to file a petition for rehearing. FED. R. APP P. 40. Because they have not done so, this will not overturn the district court's proper application of the *Pool II* mandate.

Appellants' failure to exercise the options before them does not mean that the responsibility to fix their mistake falls into this panel's lap.

## C

Appellants further argue that *Pool II*'s mandate did not affect the validity of the fee award, and thus the district court erred by reversing the award under Rule 60(b). Appellants' reliance on the mandate rule is misplaced. The district court's exercise of its discretion to vacate the fee award under Rule 60(b) actually *comports* with our court's mandate.

"The mandate rule requires a district court on remand to effect our mandate and to do nothing else." *Deutsche Bank Nat'l Tr. Co. v. Burke*, 902 F.3d 548, 551 (5th Cir. 2018) (quoting *Gen. Universal Sys., Inc. v. HAL, Inc.*, 500 F.3d 444, 453 (5th Cir. 2007)). On remand, "the district court 'must implement both the letter and the spirit of the appellate court's mandate and may not disregard the explicit directives of that court.'" *HAL*, 500 F.3d at 453 (quoting *United States v. Matthews*, 312 F.3d 652, 657 (5th Cir. 2002)).

Further, as relevant to judgments challenged on remand, "Rule 60(b)(5) provides that relief may be sought when 'the judgment has been satisfied, released, or discharged, *or a prior judgment upon which it is based has been reversed or otherwise vacated*, or it is no longer equitable that the judgment should have prospective application.'" *Flowers*, 286 F.3d at 801 (emphasis altered) (quoting FED. R. CIV. P. 60(b)(5)). Accordingly, we have found that vacatur of a fee award on remand was appropriate under Rule 60(b)(5) where the "part of the judgment that formed the basis of the granting of attorney's fees was vacated." *Id.* at 802.

In *Pool II*, the panel vacated the district court's final judgment for want of jurisdiction "from the beginning of the case" and remanded for dismissal without prejudice. 87 F.4th at 733–34. Recall that the district court's prior conclusion that Appellants were prevailing parties, and thus entitled to attorney's fees under § 1988, was based in part on its finding that Appellants had achieved judicially sanctioned relief because they had received both a TRO and a declaratory judgment. Consequent to *Pool II*'s directive for dismissal because there was no case or controversy to begin with, the jurisdictional grounds upon which Appellants' TRO and declaratory judgment rested no longer remained.

Functionally, the result is that the TRO and declaratory judgment, which "formed the basis of the granting of attorney's fees," were vacated post-*Pool II*, which rendered it permissible for the district court to undo its grant of the fee award in accordance with the relief proscribed by Rule 60(b)(5). *Flowers*, 286 F.3d at 802; *see also Koenning v. Suehs*, No. V-11-6, 2013 WL 6491075, at *1 (S.D. Tex. Dec. 9, 2013) (relying on *Flowers* to grant defendant's Rule 60(b)(5) motion to vacate plaintiff's award of $158,331.60 in attorney's fees and $6,847.63 in court costs because the award was based on a judgment "that has since been vacated by the Fifth Circuit").

No. 24-20138

The district court aptly recognized that "[i]t would be inconsistent with *Pool II* to draw a temporal line" at the entry of final judgment "and permit [Appellants] to recover fees incurred up to that line." As explained, the *Pool II* panel vacated that final judgment after deciding that no case or controversy had existed from the outset because all parties consistently agreed that the significant Charter provisions were unconstitutional. 87 F.4th at 733–34. On account of that holding, we find that the district court did not steer astray from our mandate, but rather followed it, by electing to grant the City's motion to set aside the fee award under Rule 60(b)(5).

IV

Appellants further argue that that the district court erred by reversing the fee award because the City did not appeal the award. Our precedent in *Flowers* denotes the contrary. There, the district court entered judgment on a jury verdict awarding the plaintiff damages for a harassment claim under the Americans with Disabilities Act. *Flowers* at 799. The judgment, based on the jury's liability findings and damages award, was then appealed to our court by the defendant. *Id.* While the appeal was pending, the district court granted the plaintiff's motion for attorney's fees, and the defendant did not appeal the fee award. *Id.* Then, proceeding with the merits appeal, our court affirmed the jury's findings on liability *but vacated* the damages award and remanded for entry of nominal damages. *Id.* On remand, the district court granted the defendants' Rule 60(b)(5) motion for relief from judgment awarding attorney's fees, which the plaintiff appealed. *Id.* at 800. One of the chief issues on appeal was whether the district court erred by granting Rule 60(b)(5) relief from the judgment awarding attorney's fees when the defendant never appealed the fee award when it was granted. *Id.* at 801.

Assessing this issue as a matter of first impression, we turned to our sister circuits for guidance, noting that "both the Ninth and the Seventh

12

Circuits have recognized that a party must file a separate appeal only when it challenges some aspect of the award itself." *Id.* (first citing *Ca. Med. Assoc. v. Shalala*, 207 F.3d 575, 577 (9th Cir. 2000) ("Rule 60(b)(5) is available if a party seeks relief solely on the ground that the underlying merits judgment is reversed."); then citing *Mother Goose Nursery Sch., Inc. v. Sendak*, 770 F.2d 668, 676 (7th Cir. 1985); and then citing *Maul v. Constan*, 23 F.3d 143, 147 (7th Cir. 1994)).

*Shalala* and *Maul* are particularly persuasive here, as both cases represent scenarios in which the appellate courts remanded for entry of an order vacating § 1988 fee awards—which had already been paid by the defendants—after determining that the district courts abused their discretion by *denying* the defendants' Rule 60(b)(5) motions for relief from the fee awards. In *Maul*, the Seventh Circuit held that the district court's denial of the Rule 60(b)(5) motion was erroneous because the merits judgment underlying the fee award had been reduced to nominal damages on appeal. 23 F.3d at 145, 147. Ruling similarly in *Shalala*, the Ninth Circuit observed that, "Rule 60(b)(5) is available if a party seeks relief solely on the ground that the underlying merits judgment is reversed." 207 F.3d at 577. Therefore, since the defendant's fee award was based on a merits judgment that was later vacated on appeal, the reversal of that judgment "remove[d] the underpinnings of the fee award," indicating that the district court should have granted Rule 60(b)(5) relief. *Id.* at 577–78.

Based on these decisions, in *Flowers*, we rejected the defendant's argument that relief under Rule 60(b)(5) was improper absent the defendant's appeal of the fee judgment. Because the damages award—which formed the basis for the attorney's fee award the plaintiff received—was vacated and exchanged for nominal damages, the fee award no longer had any platform to stand on. 286 F.3d at 801. That alone presented a situation that

Rule 60(b)(5) "is perfectly designed to accommodate," notwithstanding that the defendant had not appealed the fee award itself. *Id.* at 803.

Similarly, in the present case, the district court's award of attorney's fees to Appellants was grounded in the merits relief they received in the form of a TRO and declaratory judgment, which gave them "prevailing party" status under § 1988. Then, *Pool II* held that there was no case or controversy in the suit to begin with and remanded for dismissal without prejudice, which effectively vacated the preceding TRO and declaratory relief. With the footing of the fee award now removed, the district court acted well within its discretion in granting the City's motion for relief under Rule 60(b)(5). The lack of an appeal by the City from the fee award itself is inconsequential. *See Flowers*, 286 F.3d at 801.

Appellants' citation to *Frew v. Young* (*Frew VIII*), 992 F.3d 391, 395 (5th Cir. 2021), for the proposition that the City had to appeal the fee award to obtain Rule 60(b)(5) relief because attorney's fees "are a collateral matter" is misplaced. Arising from decades-long litigation that resulted in a consent decree, *Frew VIII* pertained to an interim fee award received by the plaintiffs for their motions filed to enforce certain provisions of the decree. 992 F.3d at 395. The plaintiffs had already been deemed prevailing parties under § 1988—and thus entitled to the fee award—by a panel of this court, which remanded only for the district court to conduct a reasonableness analysis regarding the fees. *Id.* at 394. On remand, the district court denied the plaintiffs any fees at all, and they appealed. *Id.* Against this backdrop, in *Frew VIII*, this court held that it lacked jurisdiction because the plaintiff's appeal, which was not filed within thirty days pursuant to Federal Rule of Civil Procedure 4, was untimely. *Id.* at 395. In reaching that conclusion, the court noted that the interim fee award at issue was "appealable as a collateral order" and thus subject to the time constraints of Rule 4. *Id.*

No. 24-20138

Contrary to Appellants' view, this discussion *did not* hold or insinuate that Rule 60(b)(5) is unavailable as a form of relief from a fee award that was not directly appealed, and *Frew VIII* did not involve a fee award that was granted based on a merits decision that had been vacated by this court. In short, the dialogue on timely appeals and the collateral order doctrine Appellants attempt to leverage from *Frew VIII* is not relevant here.

We are not strangers to finding that Rule 60(b)(5) is suitable for a movant seeking reversal of a fee award when the award is rooted in merits relief that has been nullified on appeal. *See Flowers*, 286 F.3d at 801. The Ninth and Seventh Circuits, as well as noteworthy commentators, agree. *See Shalala*, 207 F.3d at 577–58; *Maul*, 23 F.3d at 147; 15B Charles Alan Wright, Federal Practice & Procedure § 3915.6 ("If no appeal was taken from the award, some means must be found to avoid the unseemly spectacle of enforcing a fee award based on a judgment that has been reversed; if court and parties cannot cooperate in a more efficient procedure, relief should be available under Civil Rule 60(b)(5)."). That is the case here after *Pool II* held that no federal jurisdiction existed from the outset of this suit. The fact that the City did not appeal the fee award itself does not render the district court's grant of Rule 60(b)(5) relief erroneous.

V

Lastly, Appellants assert that vacating the fee award would be "severely prejudicial" to them. "Having a favorable judgment set aside is inherently prejudicial, so some extra measure of *unfair* prejudice must be present to overcome an otherwise worthy Rule 60(b) motion." *Lowry Dev., L.L.C. v. Groves & Assocs. Ins., Inc.*, 690 F.3d 382, 389 (5th Cir. 2012) (citing *Werner v. Carbo*, 731 F.2d 204, 207 (4th Cir. 1984)). Moreover, in the context of interim fee awards in civil rights cases, but still germane here, we have stated that "some uncertainty is inherent in an interim award of fees—until

15

the case has run the gauntlet of appellate review on the merits." *Shipes v. Trinity Indus., Inc.*, 883 F.2d 339, 345 (5th Cir. 1989).

There is no justification for Appellants' attempt to say that the absence of an appeal from the fee award served as a green light for their counsel to remove funds from the payout, and then claim unfair prejudice upon reversal of the underlying merits decision. As explained above, an appeal from the fee award was not a prerequisite to the district court's grant of Rule 60(b)(5) relief. And after all, Appellants knew that the merits judgment supporting the fee award was still on appeal to this court in *Pool II*—signaling that any preceding orders by the district court were subject to change—when the decision was made to delve into the client trust account holding the award funds. *Shipes*, 883 F.2d at 345. Therefore, Appellants' claim of unfair prejudice is insufficient.

\*    \*    \*

We decline to accept Appellants' assertion that their failure to raise the *Pool II* panel's violation of the law-of-the-case and our rule of orderliness requires us to reverse the district court's proper vacatur of their attorney's fees. Aligning with the mandate rule, the district court properly granted the City's Rule 60(b)(5) motion for relief from the award of attorney's fees and expenses, which stemmed from a merits judgment that had been vacated by this court, after no protest was made by Appellants. Neither prejudice nor the lack of an appeal from the fee award sways the pendulum in the opposite direction. We AFFIRM.