7 F.3d 106
 Mary L. CARTWRIGHT, Terrence Bailey and Brandee Cartwright,
Plaintiffs-Appellees-Cross-Appellants,
v.
Bernadette STAMPER, Defendant-Appellant-Cross-Appellee.
 Nos. 92-3354, 92-3508.
 United States Court of Appeals,
Seventh Circuit.
 Argued May 6, 1993.
Decided Oct. 7, 1993.
 
 William V. Barteau (argued), Indianapolis, IN, Timothy L. Bookwalter, Margo Eckard, Bookwalter & Associates, Speedway, IN, for plaintiffs-appellees.
 Henry J. Price (argued), Paul S. Bailey, Price & Barker, Janna J. Shisler, State Lottery Comm'n of Indiana, Indianapolis, IN, for defendant-appellant in No. 92-3354.
 Henry J. Price (argued), Thomas D. Hansen, Paul S. Bailey, Price & Barker, Janna J. Shisler, State Lottery Comm'n of Indiana, Indianapolis, IN, for defendant-appellee in No. 92-3508.
 Before CUDAHY, COFFEY and MANION, Circuit Judges.
 CUDAHY, Circuit Judge.
 
 
 1
 Mary Cartwright, her son, Terrence Bailey, and her daughter, Brandee Cartwright (the Cartwrights), brought this § 1983 action against Lloyd Jennings, superintendent of the Indiana state police, and officer Bernadette Stamper alleging, inter alia, that the defendants violated the plaintiffs' Fourth Amendment rights by an unauthorized entry into their apartment. The district court granted a motion for summary judgment against Jennings, and the case against Stamper went to trial. The jury found in favor of the plaintiffs, but awarded them only one dollar nominal damages on each of their claims. The plaintiffs petitioned for approximately $82,000 in attorneys' fees pursuant to 42 U.S.C. § 1988. The district court held that the plaintiffs were prevailing parties and entitled to fees but reduced the lodestar amount by one-third because of the limited relief obtained relative to the scope of the litigation. Both parties appeal. We reverse the award of fees.
 
 I.
 
 2
 The facts in this action for attorneys' fees are not disputed. Mary Cartwright was employed as the director of human resources for the Hoosier Lottery. On December 2, 1989, Cartwright informed Anne Nobles, an executive assistant to Governor Bayh, that the director of the State Lottery Commission--Jack Crawford--had sexually harassed her. Nobles contacted Lloyd Jennings, the superintendent of the state police, for assistance in the matter.
 
 
 3
 On the evening of December 8, 1989, Jennings, Nobles and Officer Bernadette Stamper of the state police, met in a shopping mall parking lot where Jennings asked Stamper to assist Nobles in the investigation. Stamper, who had experience counseling victims of sexual harassment, was told of the incident and that Cartwright was afraid of Crawford. Nobles informed Stamper that she had telephoned Cartwright at home and had been told that Cartwright had taken some medication and gone to sleep.
 
 
 4
 At approximately 8:00 a.m. the following morning, Nobles and Stamper went to Cartwright's apartment. After several knocks on the door, Cartwright's son, Terrence Bailey, answered the door. Cartwright refused to leave with them, but spoke briefly with the two and agreed to meet with Nobles later that day. Shortly after Stamper and Nobles departed, Cartwright also left the apartment.
 
 
 5
 Stamper returned to the apartment a short time later and knocked on the door several times. She identified herself and, after failing to get a response, contacted the manager of the apartment complex to unlock the door. Once the door was unlocked, Stamper reached through the door and disengaged the chain lock. She entered the apartment and, discovering Bailey, inquired about his mother's whereabouts and safety. Bailey repeatedly told her to leave and, after approximately twenty minutes, Stamper agreed to leave once Bailey assured her that Cartwright was not in danger.
 
 
 6
 The Cartwrights then brought this action against Stamper and Jennings for unspecified compensatory and punitive damages pursuant to § 1983, alleging a Fourth Amendment claim and a claim for common law trespass. The district court granted summary judgment in favor of Jennings prior to the start of trial, and the trial proceeded solely against Stamper. At trial, Stamper testified that she entered the apartment because she feared for Cartwright's safety. The plaintiffs' theory of the case, however, was that Stamper broke into the apartment in order to obtain certain documents supporting Cartwright's claim of sexual harassment so that they could be used to terminate Crawford. In an effort to bolster the claim for compensatory damages, the plaintiffs offered expert testimony to show that Cartwright suffered emotional distress from the warrantless entry.
 
 
 7
 At the conclusion of the evidentiary portion of the trial, the district court granted the defendant's motion for a directed verdict as to punitive damages, holding that the evidence did not clearly and convincingly support a conclusion that the conduct was outrageous or that the defendant's state of mind upon entering the apartment warranted punitive damages. The jury ultimately concluded that Stamper violated the Fourth Amendment rights of the plaintiffs and awarded each plaintiff nominal damages in the amount of one dollar. The jury also held that the defendant committed common law trespass and awarded one dollar each to Mary Cartwright and Brandee Cartwright.
 
 
 8
 A petition for attorneys' fees pursuant to 42 U.S.C. § 1988, requesting $111,851.75 in fees and expenses, soon followed. The district court recognized initially that there was a split in the circuits over whether a civil rights plaintiff who recovers only nominal damages is a "prevailing party" entitled to fees. The court noted that the Supreme Court had recently granted certiorari in Estate of Farrar v. Cain, 941 F.2d 1311 (5th Cir.1991), cert. granted, --- U.S. ----, 112 S.Ct. 1159, 117 L.Ed.2d 407 (1992), to resolve the conflict, but that the Court had not yet ruled on the issue. Accordingly, the district court applied the law of the Seventh Circuit to the effect that a civil rights plaintiff recovering only nominal damages is a prevailing party and entitled to attorneys' fees. Turning to a lodestar analysis, the court determined the lodestar amount to be $79,312.50, but reduced that sum by one-third for three reasons: first, the plaintiffs failed in their punitive damages claim; second, the plaintiffs spent significant time attempting to show mental anguish but recovered nothing; and third, the external benefits or future deterrent effect of the action was limited. No. IP 90-1910, Order at 14 (S.D.Ind. Aug. 31, 1992) (Order). Consequently, the court awarded fees in the amount of $52,875.
 
 II.
 
 9
 Both parties appealed the fee award. The defendant initially contended that the plaintiffs were not entitled to fees because, she argued, a party receiving only nominal damages is not a prevailing party under § 1988. Stamper also argued that the fee award was unreasonable because the mere one-third reduction does not adequately reflect the triviality of the award as compared to the relief sought. The plaintiffs, on the other hand, challenged the one-third reduction, insisting that the district court abused its discretion by failing to adequately consider the difficulty of the questions involved, the skill needed to litigate the case properly, the undesirability of the case and the time expended on the case.
 
 
 10
 After the parties submitted their opening briefs, the Supreme Court decided Farrar v. Hobby, --- U.S. ----, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992). In Farrar, the plaintiffs brought a § 1983 action for $17 million in compensatory damages alleging that Texas officials had illegally closed the school the plaintiffs operated. The district court awarded them nominal damages and, pursuant to a petition for $248,362.50 in attorneys' fees, awarded the plaintiffs $280,000. On appeal, the Fifth Circuit reversed holding that the plaintiffs were not prevailing parties entitled to fees under § 1988. The Court granted certiorari and held that a civil rights plaintiff recovering only nominal damages is nonetheless a prevailing party under § 1988. The Court, however, went on to hold that the plaintiffs, though prevailing parties, were not entitled to the fees awarded by the district court. Justice Thomas, writing for himself and four other Justices, held that "[i]n some circumstances, even a plaintiff who formally 'prevails' under § 1988 should receive no attorney's fees at all." Id. at ----, 113 S.Ct. at 575. The Court held that, before conducting the lodestar analysis, a district court faced with a petition for attorneys' fees should consider the extent of success of the litigation. "When the plaintiff recovers only nominal damages because of his failure to prove an essential element of his claim for monetary relief, the only reasonable fee is usually no fee at all." Id. (citation omitted).
 
 
 11
 Justice O'Connor concurred in the opinion but wrote separately to explain why she believed the denial of fees was appropriate. She wrote that "when a plaintiff's victory is purely technical or de minimis, a district court need not go through the usual complexities involved in calculating attorney's fees.... Instead, it is enough for a court to explain why the victory is de minimis and announce a sensible decision to 'award low fees or no fees' at all." Id. at ----, 113 S.Ct. at 576 (O'Connor, J., concurring). Justice O'Connor suggested that there are three factors courts should consider when determining whether a victory is de minimis or otherwise strictly technical: first, the difference between the judgment recovered and the recovery sought; second, the significance of the legal issue on which the plaintiff prevailed; and third, the public purpose served by the litigation. Id. at ----, 113 S.Ct. at 578-79.
 
 
 12
 In their responsive briefs, the parties recast their arguments in the light of Farrar. The defendant dropped her argument that the plaintiffs were not entitled to attorneys' fees because they were not prevailing parties, and instead focussed on the argument that the attorneys' fee award was unreasonable. She now argues that the plaintiffs' nominal damage award is de minimis given that they were seeking substantial compensatory and punitive damages. The plaintiffs took a more defensive tack and argued that the victory was not de minimis. They continued to urge, moreover, that the one-third reduction was an abuse of discretion and that they are entitled to a larger fee award.
 
 
 13
 The issue, then, is whether the plaintiffs' victory is de minimis so that the only reasonable attorneys' fee is no fee or a substantially reduced fee. Obviously, if the victory is deemed to be de minimis, the plaintiffs' argument that the district court abused its discretion in not awarding more fees is moot. At the outset, we recognize that determining whether a victory is de minimis for purposes of awarding reasonable attorneys' fees is generally left for the district court to decide in the first instance. In the present context, however, the reasons justifying deference to the district court in awarding attorneys' fees do not compel a remand, but in fact weigh in favor of resolving the issue here and now. In Estate of Borst v. O'Brien, we indicated that district courts are granted great discretion in awarding attorneys' fees for three reasons:
 
 
 14
 First, the district court is accorded this great discretion in light of its superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters. Second, the need for uniformity in awarding attorneys' fees is not so great as to warrant microscopic appellate scrutiny. Finally, reviewing courts should defer to the district court's determination so as to avoid a second major litigation strictly over attorneys' fees.
 
 
 15
 979 F.2d 511, 514 (7th Cir.1992) (citations and quotation marks omitted). A remand for the district court to reconsider its attorneys' fees award in the light of Farrar is not warranted in this case because (1) the district court already has made findings relevant to determining whether the plaintiffs' victory was de minimis and (2) a remand would foster a new round of attorneys' fees litigation which we can readily avoid by simply deciding the issue here. See Ustrak v. Fairman, 851 F.2d 983, 989-90 (7th Cir.1988) (citing cases).
 
 
 16
 As noted in Justice O'Connor's concurrence, "nominal relief does not necessarily a nominal victory make." Farrar, --- U.S. at ----, 113 S.Ct. at 578 (O'Connor, J., concurring). Thus, in many instances, a nominal recovery may very well not derogate from the importance of the victory. In order to determine whether a plaintiff's victory in obtaining nominal damages is de minimis, we look at the difference between the judgment recovered and the recovery sought, the significance of the legal issue on which the plaintiff prevailed and, finally, the public purpose served by the litigation. Id. at ----, 113 S.Ct. at 578-79. As to the first factor, the plaintiffs here sought substantial compensatory and punitive damages and recovered only nominal damages in a total amount of five dollars on two claims. The district court noted that the "plaintiffs spent significant time attempting to establish that they suffered mental anguish, yet recovered nothing." Order at 14. The first factor is the most important of the three, Farrar, U.S. at ----, 113 S.Ct. at 574 (quoting Hensley v. Eckerhart, 461 U.S. 424, 436, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983)), and clearly weighs in favor of classifying the victory de minimis.
 
 
 17
 The second factor considers the significance of the legal issue on which the plaintiffs prevailed. This factor looks not at the relief obtained but to the extent the plaintiffs succeeded on their theory of liability. Id. --- U.S. at ----, 113 S.Ct. at 578 (O'Connor, J., concurring). We can infer from the verdict here that the jury rejected the plaintiffs' broad allegations of a conspiracy to obtain documentary evidence of Cartwright's harassment claim. Cf. Order at 14 (noting "limited success in comparison to the scope of the litigation as a whole"). Further, the court dismissed the claim against superintendent Jennings at the beginning of the case for lack of evidence. Nonetheless, the plaintiffs did prevail on nearly all of their remaining claims. The jury found that Stamper violated the Fourth Amendment rights of all three of the plaintiffs and that she committed common law trespass against two of the three plaintiffs. This factor, therefore, suggests, albeit modestly, that the victory was more than de minimis. See Id. at 16 (indicating that relief obtained compared to the scope of the litigation was "limited, although significant"). Of the three factors, however, the significance of the issue on which the party prevailed tends to be the least weighty in classifying the victory. Cf. Borst, 979 F.2d at 517 (victory in obtaining nominal damages not de minimis even though plaintiff was successful on only one of its claims against one of four defendants); Ustrak, 851 F.2d at 983 (victory in obtaining nominal damages not de minimis even though plaintiff successful on only one of six counts).
 
 
 18
 Finally, the third factor considers the public purpose served by the victory. This factor principally relates to whether the victory vindicates important rights and deters future violations. Farrar, --- U.S. at ----, 113 S.Ct. at 578-79 (O'Connor, J., concurring). The more important the right at stake and the more egregious the violation the more likely it is that the victory serves a public purpose. An award of punitive damages, therefore, is strong evidence that the victory served a public purpose. Borst, 979 F.2d at 517 (punitive damage award reflects "both the value of the victory in finding a violation of constitutional rights and the deterrence value of the suit" (internal quotations omitted)); Ustrak, 851 F.2d at 989. The district court granted a directed verdict in favor of the defendant on the claim for punitive damages, concluding that the evidence did not show that the defendant had the state of mind warranting such an award. Further, the court specifically found that "the 'external benefits' or future deterrent effect of this action is limited." Order at 14. Accordingly, this factor weighs firmly in favor of finding the victory technical.
 
 
 19
 Weighing the Farrar factors--specifically, the weight of factors one and three, strongly indicating a de minimis victory, against the modest weight of factor two suggesting otherwise--we conclude that the plaintiffs' victory was purely technical and that the appropriate fee is no fee.[1] The district court did not have to undertake the lodestar analysis but, after making the findings it did, should have summarily denied the petition for fees. For the foregoing reasons, the award of attorneys' fees is
 
 
 20
 REVERSED.
 
 
 
 [1]
 Although Farrar in an appropriate case presumably leaves room for a low fee rather than no fee at all, see Farrar, --- U.S. at ----, 113 S.Ct. at 575, the majority of the panel is firmly of the view that this is not such a case