**Randall RICCI, Plaintiff,**

v.

**VILLAGE OF ARLINGTON HEIGHTS, a Municipal Corporation, Andrew Whowell and Jerome Leonard, Defendants.**

No. 94 C 7732.

United States District Court,
N.D. Illinois,
Eastern Division.

Nov. 7, 1995.

---

Lesley Ann Redman and Kenneth N. Flaxman, Kenneth N. Flaxman, P.C., Chicago, IL, for plaintiff.

Robert C. Yelton, III, Robert James Golden, Jeffrey Edward Kehl, and Dowd & Dowd, Ltd., Chicago, IL, for defendants.

## *MEMORANDUM OPINION AND ORDER*

BUCKLO, District Judge.

Defendants, the Village of Arlington Heights ("the Village") and two of its police officers, Andrew Whowell and Jerome Lehnert,[1] have filed a motion requesting this court to enter summary judgment in their favor on the complaint filed by plaintiff, Randall Ricci. For the reasons stated below, the defendants' motion is denied in part and granted in part.

### *Undisputed Facts*

Plaintiff Randall Ricci has filed this action under 42 U.S.C. § 1983, alleging that defendants have violated his rights guaranteed by the Fourth and Fourteenth Amendments.

---

1. Plaintiff has incorrectly spelled Mr. Lehnert's name in his complaint. The correct spelling will be used in this opinion.

**830**

Mr. Ricci makes three separate claims. First, he claims that Officers Whowell and Lehnert engaged in a warrantless search of his business premises. Second, he claims that he was arrested without probable cause. Finally, Mr. Ricci alleges that the Village's policy prescribing full custodial arrests for violations of its municipal ordinance requiring a business license is unconstitutional. A description of the incident in question follows.

On April 19, 1994, Officers Whowell and Lehnert entered the business premises of Rudeway Enterprises, a telemarketing firm run by Mr. Ricci and located in the Village. The Officers were there to arrest Daniel Dugo, an employee of Rudeway Enterprises for whom they had a warrant. According to Mr. Ricci, they were also there to gather evidence to put him out of business.[2] Whether true or not, defendants admit that prior to going to Rudeway, they had determined that Rudeway did not have a Village of Arlington Heights business license.

After entering the Rudeway business premises, Officer Whowell asked Mr. Ricci whether he had a Village business license for Rudeway Enterprises, as required by the Arlington Heights Village Code of Ordinances ("the Village Code"). Mr. Ricci stated that he did not have a license. Because Mr. Ricci was operating Rudeway Enterprises without a Village business license, he was arrested and taken to the Village Police Department. He was held there for about an hour, while the police performed the necessary administrative functions, and then released on a recognizance bond.

Mr. Ricci's wife ultimately obtained a Village business license for Rudeway Enterprises. The charge against Mr. Ricci was consequently dropped.

### Standard of Review

Summary judgment disposes of a claim before trial in those cases where a trial is unnecessary and will only result in delay and expense. *Ford Motor Credit Co. v. Devalk Lincoln–Mercury, Inc.,* 600 F.Supp. 1547,

1549 (N.D.Ill.1985). Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R.CIV.P. 56(c). A genuine issue of fact exists when a reasonable jury could return a verdict for the non-movant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

### Count I: The Search

Mr. Ricci contends that Officer Whowell engaged in an unconstitutional search by reading his business documents on his premises without a warrant. The only evidence that Mr. Ricci points to in support of this claim is his statement that he saw Officer Whowell pick up and inspect a 3x5 index card off a desk. Mr. Ricci says the card contained information about a client. Mr. Ricci says he saw the officer pick up the card as they were walking toward him.

■ In reading his index card, the defendant officers may or may not have conducted a "search" within the meaning of the Fourth Amendment. To establish that a search occurred, Mr. Ricci bears the burden of proving that he had a legitimate expectation of privacy in the contents of the index card. *See, e.g., United States v. Myers,* 46 F.3d 668, 669 (7th Cir.) ("A search within the meaning of the Fourth Amendment occurs only when a reasonable expectation of privacy is infringed."), *cert. denied,* —— U.S. ——, 116 S.Ct. 213, 133 L.Ed.2d 144 (1995); *United States v. Duprey,* 895 F.2d 303, 309 (7th Cir.1989) ("A defendant objecting to the search of a particular area bears the burden of proving a legitimate expectation of privacy in the area searched."), *cert. denied,* 495 U.S. 906, 110 S.Ct. 1927, 109 L.Ed.2d 291 (1990). "A reasonable expectation of privacy exists when '(1) the complainant exhibits an actual (subjective) expectation of privacy and, (2) the expectation is one that society is prepared to recognize as "reasonable." ' " *United States v. Ruth,* 65 F.3d 599, 604 (7th Cir.1995) (quoting, *Myers, supra,* 46 F.3d at 669).

---

**2.** This fact is admitted by defendants' failure to respond to Mr. Ricci's Local Rule 12(N) State-

ment. *See* Local Rule 12(M); *Schulz v. Serfilco,* 965 F.2d 516, 519 (7th Cir.1992).

■ Even if Mr. Ricci establishes that a search occurred, in order to get more than nominal damages he must establish an actual injury. *See Memphis Community School District v. Stachura,* 477 U.S. 299, 308 n. 12, 106 S.Ct. 2537, 2543 n. 12, 91 L.Ed.2d 249 (1986) ("[N]ominal damages ... are the appropriate means of 'vindicating' rights whose deprivation has not caused actual, provable injury."); *Carey v. Piphus,* 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978) (damages may not be presumed for violations of due process clause). Although Mr. Ricci has alleged injury resulting from his arrest, he has not alleged any injury resulting from defendants reading his index card. Therefore, because I rule for the defendants on his other claims, Mr. Ricci will likely only receive nominal damages at trial. *Cf. Cartwright v. Stamper,* 7 F.3d 106 (7th Cir.1993) (plaintiff alleging emotional distress from search in violation of the Fourth Amendment received only $1 from jury).[3] Despite the absence of a compensable injury, however, Mr. Ricci's claim may go forward; whether, by reading an index card, the defendants executed an "unreasonable search" within the meaning of the Fourth Amendment is a question of fact precluding summary judgment.

### Count II: Unlawful Arrest

■ Mr. Ricci claims that he was arrested without probable cause, in violation of the Fourth and Fourteenth Amendments. "Police officers have probable cause to make an arrest where 'the facts and circumstances within their knowledge and of which they have reasonably trustworthy information are sufficient to warrant a prudent man in believing that the suspect has committed or was committing an offense.'" *United States v. Levy,* 990 F.2d 971, 973 (7th Cir.1993) (quoting *Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964)).

Plaintiff admits that the officers had a reasonable basis to believe that Rudeway Enterprises did not have a Village business license. He contends, however, that no ordinance required him to have such a license, and he therefore committed no offense for which he could be arrested. I disagree.

■ Section 14–3001 of the Village Code provides that "businesses hereinafter enumerated in Section 14–3002 shall be licensed in accordance with the provisions of this Code." Section 14–3002 contains an extensive list of businesses and includes a catch-all provision covering "[a]ny and all business enterprises not named elsewhere in this Code." Telemarketing is not named explicitly in the list, but does fall within the catch-all provision. Rudeway Enterprises was required to have a Village business license.

■ Mr. Ricci further contends that there is no ordinance authorizing his arrest as a corporate officer of a business operating without a license. Again, I disagree. Section 9–201 of the Village Code renders "it ... unlawful for any person to conduct, engage in, maintain, operate, carry on or manage a business ... for which a license is required by an provision of this Code without first having obtained a license for such business." On the day of his arrest, Mr. Ricci was operating Rudeway Enterprises without a business license. The officers observed Mr. Ricci committing this unlawful act and consequently arrested him. The officers had probable cause to do so.

### Count III: Municipal Liability

Mr. Ricci argues that the Village policy requiring full custodial arrests for violations of the business-license ordinance is unconstitutional. Although the Seventh Circuit has never addressed the question, the Fourth and Ninth Circuits have both found custodial arrests for local ordinance violations to be

---

**3.** In *Cartwright,* the plaintiffs did not contest the jury verdict. They did, however, contest the fact that the court had, due to the minimal damage award, reduced the lodestar amount of their attorney's fees by one-third. On appeal, the Seventh Circuit held that if a nominal damage award is *de minimis,* the court may deny all attorney's fees to the plaintiff. 7 F.3d at 109. The court adopted a three-factor test for courts to

apply in determining when a nominal damage award is *de minimis. Id.* Thus, even though Mr. Ricci would be a "prevailing party" if the jury awards him nominal damages, he would not necessarily be entitled to his full attorney's fees. *See Farrar v. Hobby,* 506 U.S. 103, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992) (denying attorney's fees where plaintiff recovered only $1).

constitutionally acceptable. Additionally, the Supreme Court has questioned whether custodial arrests are appropriate for misdemeanor offenses, but has never explicitly addressed the question. *See Robbins v. California*, 453 U.S. 420, 450 n. 11, 101 S.Ct. 2841, 2858 n. 11, 69 L.Ed.2d 744 (1981) (Stevens, J., dissenting) (acknowledging Justice Stewart's position in *Gustafson* and noting that the Court had not yet addressed any limitations on custodial arrests for minor offenses); *Gustafson v. Florida*, 414 U.S. 260, 266, 94 S.Ct. 488, 492, 38 L.Ed.2d 456 (1973) (Stewart, J., concurring) (declaring that "a persuasive claim might have been made ... that the custodial arrest of the petitioner for a minor traffic offense violated his rights under the Fourth and Fourteenth Amendments").

The Fourth and Ninth Circuits have not followed Justice Stewart's intimations. In *Fisher v. Washington Metropolitan Area Transit Authority*, 690 F.2d 1133 (4th Cir. 1982), the plaintiff had been arrested for violating a county ordinance prohibiting eating on transit authority trains. She sued under § 1983, claiming, *inter alia*, that her arrest was *per se* unconstitutional because the offense of eating on a train was punishable only by a fine and not by imprisonment. *Id.* at 1139 n. 6. Without a more direct sign from the Court than an acknowledgment of the issue, however, the Fourth Circuit refused to find custodial arrests for ordinance violations to be unconstitutional. *Id.*

More recently, in *Higbee v. City of San Diego*, 911 F.2d 377 (9th Cir.1990), the court addressed the constitutionality of the plaintiffs' arrest for violating a municipal ordinance regulating "peep show establishments." The plaintiffs were sales clerks operating a peep show that did not conform to the city's municipal code requirements. *Id.* at 378. The clerks argued that they could have been issued a field release citation rather than being taken to jail for administrative processing of their arrest. *Id.* at 379. They sought damages under § 1983, claiming that their treatment by the police was unreasonable within the meaning of the Fourth Amendment.

The court affirmed the district court's grant of summary judgment for the defendants. While recognizing that the police could have used the lesser field release citation, the court held that the Fourth Amendment did not require it. "[P]laintiffs did not have a constitutional right to immediate liberty once they were subjected to a lawful arrest." *Id.* at 379. The court found it constitutionally permissible to detain an arrestee for post-arrest administration, even for the misdemeanor offense of violating a municipal ordinance. *Id.*

In sum, the two federal courts to have addressed whether a full custodial arrest for a minor violation is unreasonable under the Fourth Amendment have both held that it is not.

In opposition, Mr. Ricci points to dicta in *Gramenos v. Jewel Companies*, 797 F.2d 432 (7th Cir.1986). In *Gramenos*, the Seventh Circuit admitted that "probable cause" alone may not render an arrest "reasonable" within the meaning of the Fourth Amendment. *Id.* at 441. Because the plaintiff in *Gramenos* did not promote this argument, however, the court simply found probable cause and did not address a separate reasonableness question. *Id.*

In discussing the issue, the court noted the common law rule allowing "an officer [to] make a custodial arrest for a misdemeanor only if the crime was committed in his presence." 797 F.2d at 441. In *Gramenos*, the arrest was based solely on the statement of a third-party; the crime was not committed in the officer's presence. *Id.* at 433–34. *Gramenos* shows, therefore, only that the Seventh Circuit appeared willing to incorporate into the Fourth Amendment reasonableness requirement the common law rule requiring an officer to witness a misdemeanor before arresting someone for it.

■ Even if I apply this common law rule, Mr. Ricci's arrest would still be reasonable. He committed his offense of operating a business without a license in the presence of Officers Whowell and Lehnert.[4] His arrest by them was therefore reasonable.

■ Mr. Ricci also points to a recent Supreme Court case, *Wilson v. Arkansas*, ——

4. Defendants admit they knew Mr. Ricci was    operating a business without a license before

U.S. ——, 115 S.Ct. 1914, 131 L.Ed.2d 976 (1995), to show that the Court sanctions an original intent approach to Fourth Amendment inquiries. The focus on original intent in constitutional questions is not a new phenomenon. *See id.*, 115 S.Ct. at 1916 (citing Supreme Court cases looking at original intent of Fourth Amendment as early as 1925). Thus the Supreme Court's silence regarding custodial arrests for minor offenses is no less valuable after *Wilson.* I agree with the Fourth Circuit that

> [u]ntil such an interpretation of the reasonableness requirement of the fourth amendment is adopted by the Court, we must assume that it applies alike to all criminal offenses—without regard to severity of permitted punishment—to allow reasonable custodial arrests as the traditional means for invoking the criminal process.

I find that the Village policy requiring custodial arrests for violations of its business-license ordinance does not offend the Fourth Amendment.

### Conclusion

For the reasons set forth above, summary judgment is denied with respect to Count I. Summary judgment is granted on Counts II and III.

their arrival at his business. He has not argued that this knowledge required the police to obtain a warrant rather than rely on his admission of this fact in their presence.