Michelle **MORIMANNO**, and Nichole Walls, Plaintiffs,

v.

**TACO BELL, Defendant.**

**No. 1:96–CV–0121.**

United States District Court, N.D. Indiana, Fort Wayne Division.

July 17, 1997.

Thomas N. O'Malley, Eric HJ Stahlhut, Gallucci, Hopkins and Theisen PC, Fort Wayne, IN, for Plaintiff.

John R. Maley, Derek D. Murphy, Barnes and Thornburg, Indianapolis, IN, D. Randall Brown, Barnes and Thornburg, Fort Wayne, IN, for Defendant.

## MEMORANDUM OF DECISION AND ORDER

WILLIAM C. LEE, Chief Judge.

This matter is before the court on Plaintiffs' respective Petitions for Award of Attorney's Fees and Litigation Expenses. Defendant Taco Bell challenges those Petitions, contending that Plaintiffs are entitled either to no fees or to reduced fees. For the reasons stated herein, the court orders Taco Bell to pay attorney's fees and expenses to Michelle Morimanno in the amount of $60,471.75 and to Nichole Walls in the amount of $44,619.31.

## BACKGROUND

On March 20, 1997, a jury in the Northern District of Indiana, Fort Wayne Division, returned a verdict in favor of Plaintiffs, finding that Plaintiffs had been subjected to hostile work environment sexual harassment in violation of Title VII of the Civil Rights Act of 1964. The jury awarded Plaintiff Michelle Morimanno $5,400 in compensatory damages and $3,000 in punitive damages and awarded Plaintiff Nichole Walls $4,900 in compensatory damages and $3,000 in punitive damages.

After the trial, Plaintiffs each submitted a request for attorney's fees and expenses. Morimanno initially requested $42,320.30 for 265.25 hours of work, and Walls initially requested $37,757.56 for 241.5 hours of work. Those amounts include a bill of costs in the amount of $2,391.59 for Morimanno and $1,196.89 for Walls. Due to post-trial motions, Morimanno has subsequently requested additional fees in the amount of $15,950.61 for 95.5 hours of work, and Walls has requested an additional $5,855.61 for 38.5 hours of work. Plaintiffs' requests are based on the commonly accepted "lodestar" method of calculation.

In support of their Petitions, each Plaintiff has submitted an affidavit of her lead counsel, Thomas O'Malley, of the Ft. Wayne law firm Galluci, Hopkins & Theisen, P.C. ("Galluci"), which sets forth the hours and hourly rates of the lawyers who worked on the cases together with the opinion of Mr. O'Malley that all of the hours spent were reasonable and necessary. Mr. O'Malley lists his own hourly rate as $175.00 per hour; his normal, published rate was $105.00 per hour for routine legal work throughout the time of trial. That rate has since been raised to $125.00 per hour.

On July 14, 1997, a hearing was held at which Plaintiffs presented further evidence in support of their Petitions. The evidence included testimony from local attorneys as to what they believe is a reasonable hourly rate in the Fort Wayne area for similar legal services provided by a lawyer with skills and experience comparable to Plaintiffs' counsel. Taco Bell cross-examined each of Plaintiffs' witnesses and also presented its own testimony and brief oral argument in support of its position.

## DISCUSSION

In determining reasonable attorney's fees, "[t]he most useful starting point ... is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983). This is what is commonly known as the lodestar method. There are, however, considerations that may lead to an upward or downward adjustment. *Id.* at 434, 103 S.Ct. at 1939–40. Ultimately though, district courts have "discretion in determining the amount of a fee award. This is appropriate in view of the district court's superior understanding of the litigation ..." *Id.* at 437, 103 S.Ct. at 1941.

Taco Bell puts forth several reasons for why the lodestar as submitted by Plaintiffs should be adjusted downward. First, Taco Bell contends that Plaintiffs are entitled to

no fees whatsoever because they are not "prevailing parties." Second, Taco Bell argues that if Plaintiffs are awarded fees, those fees should be reduced to a total amount of $16,300.00 because of the limited results achieved. Third, Taco Bell contends that even if the court decides to apply the normal lodestar calculation, the hourly rate of Mr. O'Malley is too high and should be reduced. Finally, Taco Bell asks for a reduction because of discrepancies and other problems in Plaintiffs' Fee Petitions. In addition, Taco Bell says that each of Plaintiffs' Bill of Costs should be reduced by $147.00.

### Are Plaintiffs Entitled to Reasonable Attorney's Fees?

■ Taco Bell contends that Plaintiffs should be awarded no attorney's fees at all because their damage awards were nominal and the results achieved *de minimis*. The court rejects this request of Taco Bell.

■ This issue turns on whether the award of damages in this case was nominal. A nominal damages award is given where a plaintiff proves a civil rights violation, but cannot prove actual damages. *See Farrar v. Hobby,* 506 U.S. 103, 112, 113 S.Ct. 566, 573–74, 121 L.Ed.2d 494 (1992). However, a nominal victor in a Title VII action is still a "prevailing party" and thus qualifies for reasonable attorney's fees under 42 U.S.C. § 1988(b). *See id.* Nevertheless, a nominal victor is generally not entitled to attorney's fees if the results achieved are *de minimis. See id.* at 115, 113 S.Ct. at 575 (stating that when "a plaintiff recovers nominal damages . . . the only reasonable fee is usually no fee at all"). The amount of attorney's fees for a plaintiff who has obtained only nominal damages is governed by a three-tier analysis set out by the Supreme Court in *Farrar. See Maul v. Constan,* 23 F.3d 143, 145 (7th Cir. 1994) (citing *Cartwright v. Stamper,* 7 F.3d 106, 109). The Maul Court emphasized that the *Farrar* analysis applies only when the damages award is nominal. *See id.*

■ Taco Bell contends that Plaintiffs are entitled to no fees because the results they achieved are *de minimis* in contrast to the results they sought. Taco Bell seems to mistakenly conflate the *Farrar* analysis of when a nominal damages award should be considered *de minimis* with whether a damages award should be considered nominal in the first place. Either that, or Taco Bell simply glosses over that question. In any event, Taco Bell would have the court jump right into the *Farrar* analysis to determine whether Plaintiffs are entitled to reasonable attorney's fees, and if so, whether that amount should be substantially reduced from the requested amount. That the court declines to do. As stated above, the *Farrar* analysis for when fees should not be awarded because of *de minimis* results presupposes that the compensatory damages award was nominal. Thus, the court need not reach the *Farrar* analysis at all because the court determines that the compensatory damage awards in these cases are not nominal.

That the jury's compensatory damages awards to Morimanno and Walls are not nominal is practically self-evident. Morimanno was awarded $5400.00 and Walls was awarded $4900.00. On their faces, those awards are not nominal. The clearest supporting evidence of that is the obvious relation the awards have to the number of days each of the Plaintiffs worked with the harassers. During closing arguments, Plaintiff's lead counsel, Thomas O'Malley, suggested, among other things, that the jury might award Morimanno and Walls $1000.00 for each of the days Plaintiffs had to work with one or more of the harassers. During deliberations, the jury sent the court a note asking to see the exhibit which listed the days on which Plaintiffs worked with the harassers. The court simply told them that Morimanno had worked with the harassers on 54 days, and that Walls had worked with the harassers on 49 days. The jury's verdict clearly awarded each of the Plaintiffs $100.00 for each day she had worked with the harassers. One hundred dollars per day is certainly not a nominal award. That is especially so considering that Plaintiffs' hourly wages at Taco Bell were less than $8.00 per hour, and that neither one claimed any out-of-pocket damages for medical bills, psychologist's bills, or the like.

Nominal damages have typically been awarded where the plaintiff has proved that

his rights were violated but has not proved actual damages. In most cases, the nominal award is in the amount of $1.00 for compensatory damages. *See, e.g., Farrar v. Hobby,* 506 U.S. 103, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992). In fact, every single case that Taco Bell cites involves compensatory awards of $1.00. *See Farrar v. Hobby,* 506 U.S. 103, 113 S.Ct. 566, 121 L.Ed.2d 494; *Maul v. Constan,* 23 F.3d 143 (7th Cir.1994); *Cartwright v. Stamper,* 7 F.3d 106 (7th Cir.1993); *Kimbrew v. Evansville Police Department,* 867 F.Supp. 818, 831 (S.D.Ind.1994). Although Taco Bell would have the court measure the damages awards against the original relief sought by Plaintiffs, that is part of the *Farrar de minimis* test, and it is accordingly irrelevant to the question of whether an award is nominal. Compensatory damages of $5400.00 and $4900.00 are simply not nominal awards. Thus, the court declines to reduce Plaintiffs' attorney's fees on the basis that their victory was nominal and the results obtained *de minimis.*

### Should Plaintiffs' Attorney's Fees Be Reduced for Plaintiffs' Failure to Prevail on Most of Their Claims?

■ Taco Bell alternatively asks the court to reduce Plaintiffs' requested fees because they failed to prevail on most of their claims. Taco Bell points to the fact that Walls obtained relief on only one claim out of four initially raised in her complaint, and that Morimanno similarly obtained relief on only one of three initial claims. Taco Bell asks that the fees be reduced by two-thirds. The court declines to do that.

■ It is true that a prevailing party's attorney's fees should be reduced in some circumstances. One of those circumstances is when a plaintiff has prevailed but succeeded on only some of his claims for relief. *See Hensley,* 461 U.S. 424, 434, 103 S.Ct. 1933, 1939–40, 76 L.Ed.2d 40 (1983). As the *Hensley* Court stated, "the extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees under 42 U.S.C. § 1988." *Id.* at 441, 103 S.Ct. at 1943. The *Hensley* Court provided guidance by setting forth two questions to be addressed.

■ First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded? *Id.* at 434, 103 S.Ct. at 1939–40. If so, the hours spent on the unsuccessful, unrelated claims should be excluded in considering the amount of a reasonable fee. *Id.* at 441, 103 S.Ct. at 1943–44. However, a plaintiff who has won substantial relief should not have his attorney's fees reduced simply because the district court did not adopt each contention raised. *Id.* at 441, 103 S.Ct. at 1943–44.

Second, did the plaintiff achieve a level of success that makes the hours expended a satisfactory basis for making a fee award? This part of the *Hensley* test presupposes that fees based on unrelated, losing claims have already been excluded. Thus the essence of the remaining question is the extent of the victory on the claims on which the plaintiff *actually* prevailed.

As to the former question, Plaintiffs contend that their Fee Petitions do not claim any time that was strictly devoted to claims upon which they did not prevail. Plaintiffs further state that their Fee Petitions only request time that was devoted either entirely or substantially to the sexual harassment claims. In fact, Mr. O'Malley testified that he kept track of the specific time he devoted to each claim, and that he deducted that time from the requested fees. The deductions amount to 46.75 hours for Morimanno, a 15% reduction in the hours billed through trial, and 49 hours for Walls, a 17% reduction in the hours billed through trial. Taco Bell has submitted no contradictory evidence. If, for example, Taco Bell had presented evidence which showed that Plaintiffs had requested fees for conducting a deposition which was all or substantially devoted to issues other than the sexual harassment claim on which Plaintiffs ultimately prevailed, then the court might have some reason to reduce the fees. Taco Bell has submitted no such evidence. The court also notes that the summary judgment briefing dealt predominantly with the issue of sexual harassment. That is because the only claims from the end of discovery to trial were sexual harassment and retaliation against Walls. The discussion of Walls's retaliation claim in her briefing was limited,

and at any rate that claim was not wholly unrelated because the claim was that Taco Bell retaliated because Walls complained about being sexually harassed. Furthermore, at trial, the testimony and other evidence was overwhelmingly focused upon sexual harassment. The evidence surrounding Walls's retaliation claim took up a very limited amount of time, and in fact only one witness (Bashada Woodfin) was called whose testimony related more to retaliation than it did to sexual harassment or knowledge thereof. Accordingly, the court finds no basis for making a wholesale two-thirds reduction in fees based on the first part of the *Hensley* paradigm.

Likewise, the court sees no reason to reduce the fees based on the application of the second *Hensley* question. The concern addressed by that question does not really apply to the facts of this case. The types of cases the *Hensley* court had in mind are lengthy and complex civil rights litigation cases involving numerous challenges to institutional practices or conditions. *Hensley*, 461 U.S. at 436, 103 S.Ct. at 1941. For example, *Hensley* itself involved a case brought on behalf of all persons involuntarily confined to a state hospital. The case eventually went to trial on one count which cited specific conditions in six general areas that allegedly violated the plaintiffs right to minimally adequate treatment. The *Hensley* plaintiffs prevailed on five of those six general claims, and the Court held that the counsel's time was reasonable in relation to the success achieved. *Id.* at 436, 103 S.Ct. at 1941. However, the Court said that if the plaintiffs had prevailed on only one of their six claims, a reduction would be in order. *Id.*

These cases are relatively straightforward Title VII claims. As stated above, only three claims remained from the end of discovery onward. Of those three claims, two dealt with hostile environment sexual harassment, and the Plaintiffs each prevailed on that issue at trial. Sexual harassment was the dominant claim throughout the proceedings and was the impetus for the filing of the entire lawsuit. There is no evidence that a significant amount of time was spent on the other claims. What is more, as stated above,

the fees requested were only for time spent either entirely or substantially on the sexual harassment claims. Thus, Plaintiffs are only claiming fees for the claims on which they actually prevailed at trial. This case might have been more akin to the type of case contemplated by the *Hensley* Court, if, for example, Plaintiffs had alleged that they were sexually harassed on eighty occasions by five different men, and the jury specifically found that only two men harassed them on ten occasions. In that example, a reduction would clearly be in order. But this was not such a case, and thus no reduction will be given pursuant to *Hensley*.

**What is Mr. O'Malley's Reasonable Hourly Rate?**

■ Taco Bell argues that the hourly rate submitted for Plaintiff's lead counsel, Thomas O'Malley, is unreasonably high. Accordingly, Taco Bell asks the court to reduce Mr. O'Malley's rate to his published rate.

■ The reasonable hourly rate used in calculating the lodestar is based on the market rate for the attorney's work. *McNabola v. Chicago Transit Authority*, 10 F.3d 501, 519 (7th Cir.1993) (citations omitted). The starting point for determining an attorney's market rate is his opportunity cost, that is, the rate the attorney could have received from a client whom he charged by the hour for the *same type of work*. See, e.g., *Cooper v. Casey*, 97 F.3d 914, 920 (7th Cir.1996); *See also Tomazzoli v. Sheedy*, 804 F.2d 93, 98 (7th Cir.1986) ("the best evidence of the value of [an attorney's] time is the hourly rate which they most commonly charge their fee-paying clients for *similar legal services*") (emphasis added) (citations omitted). However, "[i]f the court is unable to determine the attorney's true billing rate (because he maintains a contingent fee practice or public interest practice, for example), then the court should look to the next best evidence-the rate charged by lawyers in the community of reasonably comparable skill, experience, and reputation.'" *People Who Care v. Rockford Board of Education, School District No. 205*, 90 F.3d 1307 (7th Cir.1996) (citing *Blum v. Stenson*, 465 U.S. 886, 895 n. 11, 104 S.Ct. 1541, 1547 n. 11, 79 L.Ed.2d 891 (1984)); *See also Yager v. Metzcus, et al.,*

1994 WL 818221, *2 (N.D.Ind.); *Cf. Cooper*, 97 F.3d at 920 (citing *McNabola*, 10 F.3d at 519) (stating that an attorney's rate is capped at the prevailing rate for similarly experienced attorneys in the area engaged in the same type of litigation). The party requesting attorney's fees bears the burden of substantiating the reasonableness of the hourly rates sought. *See Estate of Borst v. O'Brien*, 979 F.2d 511, 515 (7th Cir.1992).

In this case, Mr. O'Malley has presented ample evidence that $175.00 is a reasonable rate in the community for an area lawyer with comparable experience and skill doing the same or similar type of litigation. Mr. O'Malley has been in private practice in Fort Wayne for five years. He specializes in employment litigation, and 90% of his billable hours are now devoted to plaintiffs' civil rights litigation taken on a contingency fee basis. His record in front of juries is exemplary, with nine wins and one loss. Several local attorneys testified to Mr. O'Malley's skill and professionalism. One of his supervising partners stated that he trusts Mr. O'Malley with cases he would not entrust to attorneys with more experience.

Plaintiffs presented testimony of what other area lawyers routinely bill in similar cases. Christopher Myers, a local attorney with eighteen years of experience whose practice consists almost entirely of civil rights and employment cases, testified that he sets his rate at $200.00 per hour in his fee agreements. Myers further stated that other area attorneys charge $125.00 to $225.00 per hour for civil rights defense work, and he is of the opinion that $175.00 is a reasonable rate for Mr. O'Malley in this case. Eric Chickedantz, a local attorney with twenty-five years of experience who has served as a mediator in about one hundred employment law cases per year, testified that local attorneys regularly bill $150.00 to $200.00 per hour for similar work and he is also of the opinion that $175.00 is a reasonable fee for an area attorney with Mr. O'Malley's experience and skill. Just recently, this court, which is not unacquainted with the local legal market, awarded $175.00 per hour for the representation of a plaintiff in a sex discrimination and hostile work environment case. Counsel in that case had been in practice just under seven years and sat second chair, whereas Mr. O'Malley has been lead counsel for much of these cases, including at trial. Also, it is significant that the opposing counsel in that case, an experienced area defense lawyer, did not even oppose the $175.00/hr. fee award as unreasonable. Given all that, this court finds that $175.00 per hour is a reasonable fee in the Fort Wayne area for someone with Mr. O'Malley's skill and experience.

The remaining question is whether Mr. O'Malley is entitled to that reasonable community rate. Taco Bell argues vigorously that he is not because his normal, published rate until just recently was $105.00. Taco Bell argues that what other area lawyers charge is irrelevant because the starting place is what Mr. O'Malley actually charges paying clients. Taco Bell is almost right. Actually, though, the standard is what a lawyer charges paying clients for *similar legal services*. *See Tomazzoli v. Sheedy*, 804 F.2d at 98.

From the testimony offered at the hearing, it is clear that $105.00 was not Mr. O'Malley's rate for litigating plaintiffs' civil rights cases. Mr. O'Malley's law firm specializes in labor law. The $105.00 rate was the rate Galluci charged for all associates, including Mr. O'Malley, for run-of-the-mill legal work for their institutional clients. In contrast, Mr. O'Malley was the lead trial lawyer for Morimanno and Walls, and he spent several days litigating in front of a federal jury. It is quite common for lawyers to charge different rates depending upon the client and the nature of the legal services, and it would simply not make sense to set Mr. O'Malley's civil rights litigation rate at the same rate he charges for routine legal work. That rate is simply not probative of the rate he could command in the market for civil rights litigation.

The court is left with the problem, however, that there is no evidence in the record of what Mr. O'Malley charges as the lead lawyer on civil rights cases because he takes all such cases on a contingency fee basis. Thus, the court will follow the command of the Seventh Circuit in *People Who Care*, and set Mr. O'Malley's rate at a reasonable rate for a

lawyer in the community with comparable skill and experience, namely, the rate he has requested, $175.00 per hour.

**Deficiencies in Plaintiffs' Fee Petitions and Related Documents**

Taco Bell asks for a three to five percent reduction in the lodestar for various discrepancies and other problems with Plaintiffs' Fee Petitions and related documents. Each concern of Taco Bell's will be dealt with in turn.

First, Taco Bell complains that the Fee Petition entries contain more detailed information than the entries prepared at the time of work. Taco Bell cites only two examples. The first is the difference in Mr. O'Malley's initial diary entry on January 15, 1996, in the Walls case with the corresponding entry in the Fee Petition. The diary entry bills two hours for "meeting w/ client." The Fee Petition describes the work as follows: "Initial conference with client; review employment history, complaints to management regarding harassment; explain Title VII and assessment of cost to prevailing party." The other one is the difference between the respective January 17, 1996 entries, also in the Walls matter. The contemporaneous diary entry states, "[p]hone call client re acceptance of case," but the Fee Petition describes the work as, "[t]elephone call with client regarding acceptance of case. Advise of duty to mitigate damages, set appointment for second meeting to review case and fee agreement."

The court is unconcerned by these "discrepancies." It seems likely that Mr. O'Malley simply went back over his diary entries and provided more detail for purposes of the Fee Petitions, probably based on his original notes. The entries do not conflict in any way, the second is merely more detailed. The court has no reason to doubt Mr. O'Malley's veracity, and at any rate is certainly not going to reduce fees based on only two examples.

Second, Taco Bell says that discrepancies exist between the billable time in the diary entries and that listed in the Fee Petitions. Again though, Taco Bell's complaint is scantily supported. Only one example is provided. Mr. O'Malley's May 31, 1996 diary entry totals 1.75 hours for each case; the Fee Petition lists 2.0 hours for that day. The court agrees with Taco Bell's concern here, and accordingly will reduce the number of billed hours in each case by .25 hours. However, no broad based reduction will be given based on this one example.

Third, Taco Bell contends that the Fee Petitions are confusing because no corresponding diary entries are made for the hours which Plaintiffs list as "billed" but are not claiming from Taco Bell. The court fails to see why Taco Bell is unduly concerned with hours for which it is not being petitioned, and thus will not reduce the requested amount on that basis.

Fourth, Taco Bell says that it is difficult to assess the accuracy of the hours claimed because in many instances Plaintiffs bill by the quarter-hour instead of a tenth of an hour. Billing by the quarter-hour does not *ipso facto* call for a reduction. Plaintiffs claim that Galluci bills all their clients that way. If Galluci charges their paying clients by the quarter-hour, then there is no reason they should be forced to adjust their usual billing procedures just because Taco Bell, a defendant who *might* eventually become liable for attorney's fees, does not pay their lawyers in the same way.

Last, Taco Bell says that Plaintiffs' Fee Petitions are confusing in a number of respects which make it difficult to assess the hours claimed. Taco Bell says, for example, that the allocation of time between the two cases differs in the Fee Petitions and the diary entries. In this regard, Taco Bell cites no examples whatsoever. The court is not going to examine every entry for a conflict in time allocation. That is Taco Bell's job. Since Taco Bell has not pointed the court to any examples, no adjustment will be made for this reason either.

**Reduction in Bill of Costs**

Taco Bell asks the court to reduce each Plaintiff's Bill of Costs by $147.00 because Plaintiffs seek reimbursement for process server fees on several Taco Bell employees

800

for whom Taco Bell agreed to accept service and in fact did accept service. Plaintiffs agree that this was a mistake, and thus the court will reduce each Bill of Costs by $147.00.

## CONCLUSION

For the foregoing reasons, Taco Bell is ordered to pay Plaintiff Morimanno $60,-471.75 in attorney's fees and expenses and Plaintiff Walls $44,619.31 in attorney's fees and expenses. Those amounts are based on a $175.00 hourly rate for Mr. O'Malley and 360.5 and 279.75 hours work for Morimanno and Walls, respectively, minus $147.00 from each Bill of Costs.